STATE *ex rel.* ANGLE *v.* CITY OF KNOXVILLE *et al.*

(*Knoxville,* September Term, 1943.)

Opinion filed January 8, 1944.

KENNERLY & KEY, of Knoxville, for plaintiff in error.

JOE C. THOMASON, of Knoxville, for the City.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The relator in the Circuit Court of Knox County, who is the plaintiff in error here, filed her petition for a writ

of *mandamus* seeking to compel her reinstatement as a teacher in the public schools of the City of Knoxville. The defendants to the petition were the City of Knoxville, the members of its Board of Education, and Honorable Roy H. Beeler, Attorney General of the State of Tennessee, who was made a party because one of the questions to be raised was the constitutionality of section 2513 of the Code of Tennessee.

Relator was born in England in 1906 and had not been, at the time of the matters complained of in the petition, naturalized as an American citizen. She graduated from the University of Tennessee in 1928, and thereafter until 1940, was employed as a teacher in the city schools of Knoxville. By direction of the School Board in August 1940, she was notified that her employment would be terminated and that she would not be re-employed for the school year 1940-1941, since being an alien her employment was illegal and in violation of section 2513 of the Code of 1932. It is admitted that at the time she received the letter, relator was not a naturalized citizen.

A demurrer was filed and overruled and the defendants thereafter filed a joint answer.

The case was heard upon a stipulation of facts and the trial judge, in a written opinion, denied the relief sought and dismissed the petition.

After her motion for a new trial was overruled, petitioner prayed, was granted and perfected an appeal to this court. We have heard argument and briefs have been filed, and the case is now before us for disposition.

Five assignments of error are made, but it seems to us unnecessary to consider them separately, and it further seems to us that a consideration of the question of the constitutionality of section 2513 of the Code which is raised, effectually disposes of the appeal. The only ques-

tion is whether the School Board, under that section, were justified in terminating petitioner's employment. If they were—she has no right to complain. If they were not—she is entitled to the relief sought in her petition. Section 2513 of the Code is as follows:

"It shall be unlawful for the trustees of the University of Tennessee, the state board of education, or any county or city board of education, or any other person to employ any superintendent, principal, teacher, tutor, supervisor, or other person to have in any way the custody and care of students of the public educational institutions of this state who is not a citizen of the United States of America; and it is further provided that no person shall be employed to teach or have custody over white pupils except persons of the Caucasian race who were born in the United States, and whose parents could speak the English language and who themselves have spoken the English language since childhood. Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor, punishable by a fine of not less than fifty dollars nor more than one hundred dollars, and shall forfeit his office."

It will be observed that the mandate of section 2513 runs as well against the municipal school authorities as against the State Board of Education. Much is made by counsel of the fact that the State Board of Education issued to the relator certificates of her qualification to teach from the commencement of her employment in 1928, until its termination in 1940. In view of the Statute this seems to us inconsequential. If the Legislature declared relator's employment illegal, neither the State Board of Education nor any municipal subsidiary could change

the act of the Legislature and issue any certificate that was not void *ab initio*.

██ ██ It is obvious that the first part of section 2513 of the Code is separable from the second and complete in itself. It was not questioned that relator is a member of the Caucasian race nor that she had spoken the English language since childhood. Her employment as a public school teacher was terminated because she was "an unnaturalized American," according to the letter of dismissal sent her by the Superintendent of City Schools. The question of the constitutionality or unconstitutionality of the second part of section 2513 of the Code was not invoked against the relator, and is not before this court for review. "No one has the right to attack a particular provision in a statute as unconstitutional unless it affects him adversely." *Cheatham County* v. *Murff*, 176 Tenn., 93, 105, 138 S. W. (2d), 430, 434. It seems to us that the attack made on the second part of the section is wholly irrelevant and that the petitioner, under the facts stated in her petition, has no right to make an attack upon it. *Hancock* v. *Davidson County et al.*, 171 Tenn., 420, 433, 104 S. W. (2d), 824; *Rushing* v. *Tenn. Crime Comm.*, 173 Tenn., 308, 318, 117 S. W. (2d) 4.

██ This entire section of the Code was a part of Chapter 115 of the Public Acts of 1925, which was passed to create a uniform system of Public Education for Tennessee. In section 37 it contained a very general and detailed "rescue or saving" clause which provides that if any "section, subsection, sentence, clause and phrase" shall be held unconstitutional, that the invalidity of such part shall not affect the validity of the other parts of the act. Since, therefore, the first clause of the section is separate and distinct in form and content, a considera-

tion of its validity can be made independently of the consideration of any other part of the act, and the issue of its validity determined without reference to the rest of the section.

Since, however, we have held that the second part of the section does not affect the rights of the relator, that under the facts of this case she cannot make an attack upon it, we do not pass upon the validity of the second part of section 2513 of the Code, quoted above.

■ Next, we think that the assignment of error to the effect that the first part of section 2513 of the Code is unconstitutional because it is in violation of the Treaty with Great Britain of 1815, is without merit. Counsel makes the assignment, but makes no citation of authorities to support it.

In the case of *Heim* v. *McCall*, 239 U. S., 175, 36 S. Ct., 78, 60 L. Ed., 206, 207, Ann. Cas., 1917B, 287, a similar attack was made upon a New York statute which required that certain employees of New York be American citizens, because it was insisted that in the case of an Italian laborer who had been discharged, such statute violated the Treaty with Italy. In upholding the statute the Supreme Court of the United States held that so far as state and municipal employees are concerned, such a requirement is an incident of the relation of master and servant, and no more objectionable than would be a similar requirement if made by an employer in a private enterprise.

."In *People* v. *Crane*, 214 N. Y., 154, 108 N. E., 427, L. R. A., 1916D, 550, Ann. Cas., 1015B 1254 the validity of a statute of that state, providing that citizens only should be employed upon public works was sustained. In the course of opinion [page 175 of 214 N. Y., page 434 of 108 N. E., L. R. A., 1916D, 550, Ann. Cas. 1915D, 1254], it was said:

" 'The statute is nothing more, in effect, than a resolve by an employer as to the character of his employees. An individual employer would communicate the resolve to his subordinates by written instructions or by word of mouth. The state, an incorporeal master, speaking through the Legislature, communicates the resolve to its agents by enacting a statute. Either the private employer of the state can revoke the resolve at will. Entire liberty of action in these respects is essential unless the state is to be deprived of a right which has heretofore been deemed a constituent element of the relationship of master and servant, namely, the right of the master to say who his servants shall (and therefore shall not) be.'

"A case involving the same statute reached the Supreme Court of the United States and the integrity of the statute was sustained by that tribunal. *Heim* v. *McCall*, 239 U. S., 175, 36 S. Ct., 78, 60 L. Ed., 206, Ann. Cas., 1917B, 287.''

The foregoing is quoted from Chief Justice GREEN's opinion in *Scopes* v. *State*, 154 Tenn., 112, 113, 289 S. W., 363, 365, 53 A. L. R., 821.

We think, therefore, that this assignment of error is without merit and it is accordingly overruled.

It is also insisted by relator that section 2513 of the Code was repealed by Chapter 18 of the Private Acts of 1937, 3d Ex. Sess., known as the Teachers' Tenure Act, and applying to Knox County alone. This insistence expressly ignores the rule for construing *this identical act* laid down by this court in a Knox County case, at its September Term 1940, where this court in an unanimous opinion said that where the Teachers' Tenure Act of Knox County contravened the general law it was unconstitutional to that extent. *Knox County* v. *State ex rel. Nighbert*, 177 Tenn., 171, 175, 147 S. W. (2d) 100, 102:

"The act here in question is in no way in conflict with the Act of 1925, Code, section 2306, et seq., except insofar as section 3 thereof contains grounds for the dismissal of teachers, principals, supervisors, or other employees not appearing in section 2325(10) of the 1925 Act. *To the extent of such excess grounds, section 3 is unconstitutional, under section 8, Article 1, and section 8, Article 11, of the State constitution, because in contravention of a general law of the State.* State ex rel. v. *Hamilton County,* 170 Tenn., 371, 95 S. W. (2d), 618; *Anderson* v. *Carter County,* 172 Tenn., 114, 110 S. W. (2d), 321; *State ex rel.* v. *Trotter,* 153 Tenn., 30, 281 S. W., 925." (Emphasis ours.)

The inference is inescapable that if the Teachers' Tenure Act undertakes to modify or repeal the provisions of the general law with regard to the qualification of teachers, the Private Act is unconstitutional to that extent.

It is insisted that under the Teachers' Tenure Act petitioner was entitled to have specific charges filed against her, and to a hearing; but since the issuance of a certificate to petitioner and her employment as a teacher in the public schools were unlawful and void *ab initio,* we think she had no rights as a teacher, whatever.

"The re-employment of the relator in 1930 was in direct violation of the mandatory provisions of the charter. Regardless of the reason which impelled the city to remove him from that employment, the relator is not entitled to the affirmative aid of the courts to secure his reinstatement. He must assert his title or right to the position, and that he cannot do, because he has not qualified under the law which he seeks to enforce. If this court should direct his reinstatement, its processes would

be used to violate the law of the charter to the same extent that it was violated by the officers of the city when the relator was reappointed. No court could ever justify such use of its processes." *State ex rel. Baker* v. *City of Knoxville,* 166 Tenn., 563, 566, 64 S. W. (2d), 17, 18.

Accordingly we hold that such relator's employment was void as being in contravention of the provision of the Code, that the City Board of Education, acting through the Superintendent of Schools, was justified in terminating that employment as and when it did.

All assignments of error are overruled and the order of the trial judge is affirmed.