[Civ. No. 32928. First Dist., Div. Two. Jan. 20, 1975.]

Adoption of DAVID B. BERMAN et al., Minors.
DONNA ROWLAND BERMAN, Plaintiff and Respondent, v.
EUGENE BLYMYER et al., Defendants and Appellants.

[Civ. No. 33670. First Dist., Div. Two. Jan. 20, 1975.]

Guardianship of the Estates and Persons of DAVID B. BERMAN et al., Minors.
EUGENE BLYMYER et al., Petitioners and Appellants, v.
PETER P. BERMAN et al., Objectors and Respondents.

688

## COUNSEL

Eugenia MacGowan for Defendants and Appellants in No. 32928 and for Petitioners and Appellants in No. 33670.

David W. Sternberg for Plaintiff and Respondent in No. 32928 and for Objectors and Respondents in No. 33670.

## OPINION

**BRAY, J.**\*—Appellants, Eugene Blymyer and Carlotta Blymyer, appeal from (1) order of the San Mateo County Superior Court, and (2) Judgment of the Alameda County Superior Court.

*Questions Presented:*

1. The court did not err in denying appellants' motion to set aside stepparent adoption.

2. The court did not err in denying the grandparents visitation rights with the grandchildren.

*Record:*

Respondent Peter P. Berman is the father, and Carole Berman, deceased, was the mother of David Berman, aged nine years at the time of this litigation, and Julie Berman then aged five years. Carole Berman died February 15, 1971, after a protracted illness. She had been separated from her husband for almost the entire duration of her illness. In a pending action for dissolution of the marriage, Carole had been granted pendentè lite custody of the children. The two children had been

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

intermittently for about two years in the actual care and custody of their maternal grandparents, appellants Eugene and Carlotta Blymyer. During the last eight months of the mother's illness, the children were cared for exclusively by appellants and Nancy and Harold Lewis, aunt and uncle of the children. On February 16 Peter Berman promised appellants that they would be the guardians of the children and he gave them a writing authorizing them to be appointed such.

Shortly thereafter, appellants and the Lewises filed in the Alameda County Superior Court a petition for guardianship of the children and were granted temporary guardianship ex parte. On February 22, 1971, the children's father married respondent Donna Berman. On March 18, 1971, an order was filed dismissing the temporary guardianship and granting appellants reasonable visitation rights with the children. Immediately, the children began to live with their father and his new wife. Thereafter, a number of orders were made by the Alameda County Superior Court granting appellants visitation rights with the grandchildren and modifying the rights granted. During the period respondents, in spite of the court orders, on occasions refused to allow appellants any visitation with the grandchildren. Finally, on May 14, 1972, respondents cut off all visitation and communication between appellants and the grandchildren. On July 17, 1972, the court ordered that visitation privileges to petitioners be as deemed appropriate by the natural father of the children, respondent herein and affording reasonable rights of visitation to the grandparents as theretofore indicated. The matter was then continued until October 17, 1972, for hearing a further report from the probation department. On October 22 respondents, for a third time, cut off all visitation between appellants and the grandchildren. Various hearings concerning visitation rights were held culminating in a judgment on February 26, 1973, ordering that respondent parents have complete discretion to determine the nature and extent of grandparent visits, if any, without limitation as to time. "The interim order heretofore issued by this Court vesting discretion in the father to determine grandparental visits is modified to include the adopting mother, DONNA BERMAN, and the interim order as so modified shall continue until each child attains 18 years of age." Appellants appeal from this judgment. In the meantime, respondent Donna Berman commenced proceedings in the San Mateo County Superior Court for stepmother adoption of the two minors culminating on December 14, 1971, in a decree providing such adoption. No notice of these proceedings was given appellants, and they did not discover that adoption proceedings had been held until more than six months after the decree was entered.

Apparently, respondents concealed from the San Mateo court the proceedings in the Alameda County court which had granted respondents visitation rights with the children and concealed from the Alameda County court the pendency of the adoption proceedings in the San Mateo County court.

On October 19, 1972, appellants filed a motion in the latter court to set aside the stepparent adoption on the grounds of fraud and mistake, and also for visitation rights with the grandchildren. On November 29 the court denied the motion on the ground that "[t]he Court is of the opinion that the grandparents have no standing to challenge the adoption." Appellants appeal from the order of denial.

1. *Motion to set aside stepparent adoption.*

■ It is conceded that no California case has considered the question of whether grandparents, as such, have standing to attack a stepparent adoption of their grandchildren.

In *In re Fahlman* (1927) 84 Cal.App. 248, 252 [257 P. 893], the father of a minor died leaving a daughter 10 years of age. The record makes no mention of the child's mother surviving the father. A petition for adoption of the child was filed in the Merced County Superior Court by Walter S. Joy and Annie Joy (apparently of no relation to the child). Notice was given to the maternal grandparents who had filed a petition for guardianship. At the hearing of the adoption petition, the grandparents filed opposition to the adopting of said minor. The court granted the order of adoption and the grandparents appealed. No question was raised as to the standing of the grandparents to object to the adoption nor to appeal from the order granting it. The reviewing court pointed out that the then code gave no preference to relatives in adoptions; that the record showed that the Joys were fit adopting parents; and that the court found the adoption to be for the best interests of the child. In affirming the granting of the petition of the unrelated couple, the court set forth what is still the rule in adoption matters: "Upon first impression it would seem that grandparents should be given preferential rights in matters of adoption, but the legislature has omitted so to provide, and has made the welfare of the child the dominant factor, and not the wishes or desires of anyone who might, perchance, be a relative." (*In re Fahlman, supra,* at pp. 251-252.) This case is not a precedent for the case at bench, as a different situation arises where the child to be adopted has no parents, and the adoption is sought by strangers to the blood.

There are cases in other jurisdictions both ways on the subject of grandparents having authority to attack an order of adoption of their grandchildren. However, most of those allowing such an attack are in situations where the adoption is by other than relatives.

Appellants rely on a statement extracted from Annotation: Adoption Decree—Who May Attack (1963) 92 A.L.R.2d 813, 817, fn. 10: "Where the interest at issue in the proceeding in which the adoption decree is attacked is the custody and control of a child, rather than merely some property interest arising out of the adoption, the courts may be expected to show extreme liberality in permitting one technically a stranger to the adoption proceeding to bring the matter to the attention of the court, since the social interest of the state in protecting the . . . child is involved. Under such circumstances, the person raising the issues may be treated as an amicus curiae." However, the annotation points out ". . . that when the only objection made by a party is that his consent was not obtained or that he did not receive notice, there is no necessity for the court to determine such party's standing to maintain an action to vacate the adoption decree if the court holds that such party was not entitled to notice and that his consent was not necessary." (92 A.L.R.2d at p. 819.) In *State* v. *District Court* (1923) 66 Mont. 427 [213 P. 802], the adopted children's stepfather sought revocation of the order of adoption by the children's aunt, the sister of his deceased wife, on the grounds that his consent had not been obtained and he had not received notice. The court affirmed the action of the trial court in sustaining a motion to quash the petition for revocation, stating that although the stepfather stood temporarily *in loco parentis* to the children, under the adoption statutes, which provided that a legitimate child cannot be adopted without the consent of its "parents," if living, his consent to the adoption was not necessary since the statute did not apply to a stepfather; he was not entitled to notice of hearing under the statute; and upon the filing of the petition for adoption, the court had jurisdiction to make the order of adoption.

Appellants cite *In re Adoption of Cheney* (1953) 244 Iowa 1180 [59 N.W.2d 685], for the proposition that one acting *in loco parentis* is entitled to the rights of actual parents insofar as notice in adoption proceedings is concerned. *Cheney* is also distinguishable from the instant case. In *Cheney* the court held that the petition alleging that the minor child was in the custody of the stepfather and mother at all times from their marriage until the mother's death; that since the mother's death, the child was at all times in custody of and was supported by the

stepfather; and that the stepfather knew nothing of the adoption proceeding until after the decree, was sufficient to establish the stepfather's right to litigate the validity of the adoption decree whereby the child was adopted by apparent strangers. The Berman children had been in the care and custody of their father and stepmother for nine months prior to the initiation of the adoption proceedings.

A most peculiar ruling was made in *In re Adoption of Watson* (1961) 45 Hawaii 69 [361 P.2d 1054, 1059]. There, the court held that a grandparent is not a necessary party in an adoption of a grandchild proceeding, and that notice is not required to be given him of the proceeding, but that the juvenile court (the court having jurisdiction of adoption proceedings) ". . . is not precluded from considering a petition or motion filed by any properly interested person to be permitted to show good cause why a decree of adoption previously entered should be set aside or modified." However, it held that such person could not appeal from the refusal of the court to consider his application nor from the determination of the court thereon. The reviewing court dismissed the grandfather's appeal from the juvenile court's order dismissing his petition to set aside the order allowing the grandchildren to be adopted by a stepfather.

There is no statutory requirement that a grandparent be given notice of a stepparent adoption proceedings where the minor is in the care and control of a natural parent and a stepparent. A review of title 2, chapter 2 of the Civil Code, *Children by Adoption,* discloses only one apparent notice provision, i.e., that contained in section 226 which requires the clerk of the court to notify the State Department of Social Welfare[1] at Sacramento in writing of the pendency of the proceeding and of any subsequent action taken. Section 197.5 of the Civil Code provides in effect that if either the father or mother of an unmarried child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor ". . . upon a finding that such visitation rights would be in the best interests of the minor child." This provision does not require notice to the grandparents of the pendency of a stepparent adoption proceeding, and while the kindly and courteous thing would be to give the grandparents such notice, the grandparents would still have no standing to object to the adoption, nor to attack the order of adoption when made.

Section 226m of the Civil Code provides that hearings in adoption proceedings ". . . shall be held in private, and the court shall exclude all

---

[1]Section 226 was amended by Statutes 1971, chapter 1593, section 47.6, operative July 1, 1974, to substitute Department of Health for Department of Social Welfare.

persons except the officers of the court, the parties, their witnesses, counsel, and representatives of the agencies . . ." described. Obviously, if the Legislature intended that grandparents would have standing in stepparent adoption proceedings, it would have said so here or in one of the many sections in the Civil Code dealing with adoptions.

In considering who may attack a decree of adoption, it is interesting to note the following statement in *Walter* v. *August* (1960) 186 Cal.App.2d 395, 398 [8 Cal.Rptr. 778, 83 A.L.R.2d 941]: "Lack of consent by the natural parents would, at most, render the decree subject to attack by them. It would not be void in the sense that it could be treated as a nullity, or even attacked directly, by anyone else except the child himself."

Where a court has held that parents, in the face of a statute requiring their consent, are precluded from attacking the decree of adoption, it would seem incongruous to hold that grandparents, who are not entitled to and who did not receive notice, could set aside a stepparent adoption. A stepparent's relation to the grandparents of the spouse, whose place the stepparent is taking, is a rather delicate one and perhaps it is just as well that the Legislature has not provided that the grandparents may appear in a proceeding in which a third party is taking the place of their daughter or son as the parent of their grandchild.

In *Sweeney* v. *Bowles* (1961) 188 Cal.App.2d 196 [10 Cal.Rptr. 240], a proceeding to have minor children declared free from custody of their father, notice was given him by publication. No notice was given to any relatives. Appellants then, with the consent of the childrens' mother, were granted a decree of adoption of them. The father sought to set aside both the decree of abandonment and that of adoption. One of the grounds on which he attacked the adoption decree was that the abandonment decree was void because the relatives had not been served with notice of that proceeding as required by section 777 of the Welfare and Institutions Code, and hence the adoption decree, lacking the support of a valid abandonment decree, was likewise void. The court held that both decrees were valid even though the relatives had not been served with notice of the abandonment proceeding. The ruling in effect shows that notice of adoption proceedings by a stepparent need not be given relatives.

At argument, appellants contended that because the grandparents had had the custody and care of the children intermittently for a period of

about two years, the grandparents were "de facto parents" and as such entitled to notice of the adoption proceedings and at least entitled to attack the order of adoption. Appellants rely on *In re B.G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244]. There, the two children involved were brought in 1969 by the father to the United States, the mother remaining in Czechoslovakia. On the death of the father in 1969, the minors appeared in juvenile court on petition of a social worker and were adjudged dependent children of the juvenile court and placed in a foster home. In August 1971 the matter came before the court for annual review. At this hearing the mother appeared and sought custody of the children. One of the questions considered on the appeal from the order continuing the custody of the children by the juvenile court was whether the foster parents had standing to participate in the proceedings. The reviewing court held that they did as they were "de facto parents" defining parent as referring to ". . . that person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care." (*In re B.G., supra,* at p. 692, fn. 18.) As such de facto parents the foster parents were entitled to participate in the proceedings, apparently as amici curiae. The court expressly refused to hold that such a parent was entitled to notice of custody proceedings, saying at page 693, footnote 21, "[w]e do not hold that a de facto parent is a 'parent' or 'guardian' as those terms are used in the Juvenile Court Law, nor do we express a position whether constitutional principles of due process or equal protection may require that a de facto parent, in some instances, receive rights of notice, hearing, or counsel afforded natural parents or guardians under that law."

In the instant case, at the time of the hearing of the stepmother's adoption proceeding, appellants were not assuming on a day-to-day basis, or otherwise, the role of parents but, assuming that they could be considered de facto parents, there is no requirement that they be given notice of the adoption proceedings.

It is difficult to understand appellants citing *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], as supporting their contention, for it in nowise is applicable here. It dealt with a dependency hearing and held that the father of an illegitimate child is entitled to a hearing on his fitness as a parent before his children are taken from him.

The appeal in No. 32928 from the denial of appellants' motion to set aside the stepparent adoption must be dismissed.

## 2. *Visitation.*

As the record shows, liberal rights of visitation were granted the grandparents when first the father had taken their custody after the death of the mother. After the father's marriage with the stepmother, the Alameda County court gradually reduced the visitation rights until, finally, having determined that the best interests of the children required that they not be subjected further to the bitter friction between the parents and grandparents, it rendered the judgment which in effect denied them any right of visitation, as it left the determination of grandparental visitation entirely to the father and the stepmother. Section 197.5 of the Civil Code provides for visitation rights in parents of the mother or father of an unmarried minor child ". . . upon a finding that such visitation rights would be in the best interests of the minor child." (*Roquemore* v. *Roquemore* (1969) 275 Cal.App.2d 912, 917 [80 Cal.Rptr. 432].)

In the instant case the court found that the best interests of the children require that ". . . the parents have complete discretion to determine the nature and extent of future grandparental visits, if any. . . ."

The record fully supports the court's finding and its further finding that "Hostilities began immediately after the . . . mother's death when the grandparents unsuccessfully sought to bar the father from taking custody of the children. . . . Three prior visitation orders of this court have failed to help the situation and the children continue to be the innocent pawns in the ongoing battle. . . . the grandparents, among other things bearing on the maintenance of a stable parent-child relationship, have: 1.) moved to set aside the stepmother's adoption of the children; 2.) appealed from the decision of the San Mateo Superior Court denying their motion; 3.) during visits permitted by the father, taken the children to a psychiatrist for examination and diagnosis without emergency or therapeutic reason and without the knowledge or consent of the parents; 4.) during visits permitted by the father, taken the children for interview by the grandparents' attorney without the knowledge or consent of the parents."

As the court found: "Prior orders have determined that the parents are fit and proper custodians of the children and . . . nothing has occurred . . . to justify any different conclusion now." The evidence shows that the constant turmoil between the parties is as described by the court as a "battle" in which the children are the ones most likely to get hurt. The grandparents undoubtedly exhibit great love and concern for the

children, but unfortunately the circumstances are such that it is better for the children that the grandparents abstain from all contact with them, until such time as there exists " . . . a unified and congenial family atmosphere with the grandparents ultimately included. . . ."

A study of the record clearly shows that giving the parents complete discretion to determine the question of visitation is definitely in the best interests of the children, and that the court's order to that effect is based on strong evidence.

The record fails to bear out appellants' contention that the Alameda County Superior Court judge prejudged appellants' case or denied appellants a fair trial. The record shows that the judge was patient, fair and open-minded, and that his conclusion that ". . . the breakdown of the interpersonal relationship between the parents and grandparents has become so severe and to me so final . . ." is strongly supported by the evidence.

Appellants contend that the court refused to allow them to reopen consideration of the events prior to July 17, 1972, when the then judge ruled that the matter of the grandparents' visitation rights were to be determined by the childrens' father. The court ruled that the issue now before it was whether conditions had changed since that order was made and what the conditions were at the present time. The court was correct. Appellants had not appealed from that order and it would have been a waste of time to rehash the situation on which the former order was based. The court was necessarily concerned with the present situation of the parties. The evidence disclosed that the friction between the parties had not changed.

Appellants contend that since respondent David Berman was the moving party he had the burden of proving that it was no longer to the best interests of the children for the grandparents to have visitation rights and that the court placed the burden on the grandparents to prove the contrary. Regardless of who had the burden of proof, the weight of the evidence proved by far the propriety of the court's last order.

Appellants contend that the issue of whether Donna Berman had the right with her husband to determine the grandparents' rights of visitation was not before the court because no pleading asked and, hence, the court had no jurisdiction to include her in its order. However, the court had

the evidence before it and had jurisdiction to order whatever it showed was for the best interests of the children. (Civ. Code § 197.5, subd. (a).)

The judgment in appeal No. 33670 is affirmed. The appeal from the order in appeal No. 32928 is dismissed.

Taylor, P. J., and Rouse, J., concurred.