### In re ADOPTION OF Daniel Bert TAYLOR.

Court of Appeals of Tennessee, Eastern Section.

July 6, 1984.

Carl R. Ogle, Jr., Jefferson City, for appellants Kenneth and Mary Elizabeth Arnold.

Richard L. Colbert, Asst. Atty. Gen., Nashville, for appellee Atty. Gen., for the State of Tenn.

OPINION

SANDERS, Judge.

The Appellants have appealed from a decree of the chancery court denying their petition to set aside an order allowing the

adoption of their grandson by his stepfather.

On September 21, 1982, Tommy Lynn Taylor filed a petition in the chancery court of Jefferson County pursuant to T.C.A. § 36–108, et seq., to adopt Daniel Bert Taylor. The petition alleged the petitioner is married to Nancy Irene Johnson, the natural mother of the child, and she joined in the petition consenting to the adoption. The court entered a decree authorizing such adoption.

On October 21, 1982, the petitioners, Kenneth Arnold and wife, Mary Elizabeth Arnold, filed a petition seeking to set aside the order allowing the adoption. The petition alleged they are the natural grandparents of the child and, since their son (who was the natural father of the child) is deceased, they should have been given notice of the petition to adopt. The petition then alleged, in broad and all-inclusive terms, that the adoption is not in the best interest of the child since no guardian ad litem was appointed to represent the child; the court was not fully advised of all relevant facts concerning the best interest of the child; the petition for adoption did not contain all facts or information required by T.C.A. § 36–106; and all necessary parties were not given notice.

It is observed that the petition is totally lacking in any specifics that would alert the court to the fact there may be cause for concern about the welfare of the child or the failure of the proceedings to conform with the statute.

The petition concludes with the statement that "in the event that the Court finds that the natural grandparents have no right to notice under the circumstances contained herein or that the child has no right to representation, then Petitioners would allege that the Tennessee Statutes which deal with Adoption and the manner in which Adoptions are handled in Tennessee are contrary to the Constitution of the State of Tennessee and the United States."

The chancellor, in his determination of the case, held the petitioners were not necessary parties to the adoption proceeding nor were they entitled to notice under the statute. He also found there was no constitutional infirmity in regard to the statutory provisions relating to stepparent adoption.

The petitioners have appealed and have presented the following issues"

"1. Does the failure to give notice to a grandparent of the pending adoption of their grandchild deprive them of a right which is protected by the Constitution of the United States and the State of Tennessee?

"2. Does the failure to appoint someone to represent the interest of a minor child at an adoption proceeding deprive him of rights guaranteed by the United States Constitution and the Constitution of the State of Tennessee?

"3. Were the natural grandparents entitled to notice of the adoption procedures in the particular case?

"4. Were the natural grandparents entitled to intervene in an action for adoption once they learned such action had been instituted?

"5. Is the Tennessee Adoption Law unconstitutional in that it does not have proper procedural safeguards to protect rights of minors and other family members?"

Although the Appellants have presented five issues, they appear to have waived all except numbers 3 and 4. They first say, in their brief, they have been unable to find any cases which directly support the issues raised in their brief. They then say, "The issues addressed here will be whether or not Appellants are entitled to notice of a Petition for Adoption in the circumstances that are involved in this case, and whether or not they should be allowed to intervene once a Petition for Adoption has been filed." They further say, "The Appellants are not here attempting to state that they are entitled to the adoption of the child or that they are entitled to stop the adoption of the child, but simply that they should be entitled to notice and the right to intervene

simply to speak to the narrow issue of 'what is in the best interest of the child.'"

Aside from the broad statement in their petition that the adoption "is not in the best interest of the minor child," there is nothing in the record to indicate that the adoption is not in the child's best interest. The petitioners have not pointed to any fact or circumstance which they contend is contrary to the child's best interest. In light of their statement that they are not now contending they "are entitled to stop the adoption of the child," it is difficult indeed to know what relief they seek. The following statement in their brief appears to express their real concern:

"The grandparents in this particular case were deprived of their interest and their deceased son's interest in having someone who would continue to carry on the family name. It is the position of the Appellants that this rises to a property interest which is protected by the Fourteenth Amendment of the United States Constitution. They are therefor entitled to notice and due process before that property right is removed.

"Appellants candidly admit that they have found no case in Tennessee which supports this view and no case in any other jurisdiction that supports this particular view as to the property rights and interest of both the minor child and themselves. However, justice requires that this theory be considered by this Honorable Court when passing on this case as a whole."

■ This brings us to the issue of whether or not the natural grandparents are entitled to notice of the adoption. We think the answer to that issue is in the negative. Since adoptions are governed by statutes which are in derogation of the common law, they must be strictly construed. *Delamotte v. Stout*, 207 Tenn. 406, 340 S.W.2d 894 (1960); *Clements v. Morgan*, 201 Tenn. 94, 296 S.W.2d 874 (1956). T.C.A. § 36–108 requires the consent of the natural parents but there is nothing in the statute which could be construed to require the consent of or notice to the grandparents. In the case of *In Re: Knott*, 138 Tenn. 349, 197 S.W. 1097 (1917)

our Supreme Court addressed the issue of notice to natural parents in adoption cases. As pertinent here, the court said:

"The plainest instincts of natural justice require that the natural parents should know of the proceeding before the custody of their child is taken from them and given to another. It has been so adjudged in many cases, some of which are: *Furgeson v. Jones*, 17 Or., 204, 20 Pac., 842, 3 L.R.A., 620, 11 Am.St.Rep., 808; *Ross v. Ross*, supra [129 Mass. 243]; 30 L.R.A.(N.S.), 146, note; *McCormick's Estate*, 108 Wis., 234, 84 N.W., 148, 81 Am.St.Rep., 890; 1 R.C.L., 607.

"It would seem from the authorities that adoption statutes, in order to be constitutional, must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents, or that it is manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which they had notice."

■ Since our adoption statute provides for notice to and consent by the natural parents of the child to be adopted, we find no infirmity in the statute, constitutionally or otherwise, in its failure to extend that notice or consent to the grandparents.

For constitutional construction of T.C.A. § 36–108, see *State Dept. of Human Services v. Ogle*, 617 S.W.2d 652 (Tenn.App. 1980).

The Appellants also insist that once they learned of the adoption they should have been permitted to intervene.

■ Had the petitioners shown to the satisfaction of the court that it was not in the best interest of the child to be adopted, and it was in the child's best interest for them to be permitted to intervene, the court, no doubt, would have permitted them to do so. There is nothing in the statute which provides for the intervention of grandparents and we see no useful pur-

pose in their being permitted to do so as a matter of right.

The watchword of all courts in such things as adoptions and custody of children is the welfare of the child. We do not perceive that any court would deny a grandparent, or even a stranger, to intervene in a proceeding if the welfare of the child required it. By the same token, we see no compelling reason for them to be permitted to intervene just for the sake of being a party to the proceedings. There is nothing in this record to demonstrate that the welfare of the adopted child in this case would have been served by the intervention of the petitioners.

Courts from other jurisdictions have had occasion to face situations similar to the one before us.

In *In re Ivarsson*, 60 Wash.2d 417, 374 P.2d 179 (1962), the paternal grandparents of a girl who had been adopted by her stepfather filed a petition to vacate and set aside the adoption decree. It appears that, subsequent to the death of the girl's natural father, the girl's natural mother had remarried and the second husband had succeeded in adopting the child.

The *Ivarsson* trial court dismissed the grandparents' petition to vacate the adoption decree; on appeal, the appellants claimed to have instituted the action solely to aid the child. In response to such contention, the Washington Supreme Court stated that "[i]f it could be conceived that under certain circumstances a blood relative's concern for a child's physical welfare could suffice as a basis for standing to institute an action to vacate an adoption decree, we are satisfied those circumstances do not exist here." *Id.* 374 P.2d at 180. The court continued to hold that it found "no rights of the petitioners to have been adversely affected by the adoption decree. The petitioners are without standing to challenge its validity." *Id.* at 181.

In *In re Berman's Adoption*, 44 Cal. App.3d 687, 118 Cal.Rptr. 804 (1975), the maternal grandparents appealed, in part, from the trial court's decision which had denied their motion to set aside the step-mother's adoption of their grandchildren. The facts indicate that the natural mother had died after a protracted illness and that no notice had been given to the grandparents during the subsequent adoption proceeding.

In affirming the trial court's decision, the California Court of Appeals noted that, in California, "[t]here is no statutory requirement that a grandparent be given notice of a stepparent adoption proceedings where the minor is in the care and control of a natural parent and a stepparent" and that "while the kindly and courteous thing would be to give the grandparents such notice, the grandparents would still have no standing to object to the adoption, nor to attack the order of adoption when made." *Id.* 118 Cal.Rptr. at 808.

The *Berman* court also offered the following interesting point:

"A stepparent's relation to the grandparents of the spouse, whose place the stepparent is taking, is a rather delicate one and perhaps it is just as well that the Legislature has not provided that the grandparents may appear in a proceeding in which a third party is taking the place of their daughter or son as the parent of their grandchild."

*Id.*

In *In re Watson's Adoption*, 45 Haw. 69, 361 P.2d 1054 (1961) the Hawaiian Supreme Court confronted a factual situation virtually identical to that in the present case. There, the trial court had dismissed a petition by the natural paternal grandfather of the two adopted children to set aside or modify the decree of adoption entered in favor of the children's stepfather.

The Supreme Court, in affirming the lower court's decision, stated that "[a] person, whether related to a child or not, who does not have any legal interest or custodial right in and to the child, cannot assail an adoption decree on the basis that he was not made a party to or given notice of the adoption proceedings." *Id.* 361 P.2d at 1057. The court went on to state:

"Apropos of the issue pertaining to the legal standing of appellant it is noted that there is a cumulus of judicial precedents, which support the rule that a person who has no legal interest or custodial right in and to a minor child in an adoption proceeding, cannot intervene or take an appeal. Other illustrative cases are *In re Cormack,* 110 Kan. 231, 203 P. 297; *Deffenbaugh v. Roden,* 182 Ark. 348, 31 S.W.2d 406; and *Leonard v. Honisfager,* 43 Ind.App. 607, 88 N.E. 91."

For other cases which deal with grandparental rights in such matters as adoption, child custody, and visitation, see *Aegerter v. Thompson,* 610 S.W.2d 308 (Mo.App. 1980); *Barriner v. Stedman,* 580 P.2d 514 (Okla.1978); *Krieg v. Glassburn,* 419 N.E.2d 1015 (Ind.App.1981).

 Finally, the appellants are without standing to contest the constitutionality of the Tennessee adoption statutes. In a variety of situations, Tennessee courts have refused to permit an individual to question the constitutionality of a statute in the absence of a showing that he or she has been adversely affected by it. *See Porter v. City of Paris,* 184 Tenn. 555, 201 S.W.2d 688 (1947); *State ex rel. Angle v. City of Knoxville,* 180 Tenn. 462, 176 S.W.2d 801 (1944); *Sherrill v. Thomason,* 145 Tenn. 499, 238 S.W. 876 (1922). As mentioned earlier, under our common law in adoption proceedings, grandparents possessed no right to notice or right to intervene. That being so, the Appellants in the present case cannot claim their rights or interests have been adversely affected by the Tennessee adoption statutes.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P.J., and FRANKS, J., concur.