666 A.2d 215

R.K. AND L.K., (MATERNAL GRANDPARENTS OF MINOR CHILD, S.B.B.), PLAINTIFFS, v. A.J.B., (LEGAL FATHER OF MINOR CHILD, S.B.B.), AND H.B., (THE STEPMOTHER OF MINOR CHILD, S.B.B.), DEFENDANTS.

IN THE MATTER OF THE ADOPTION OF A CHILD BY H.B.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

Decided April 7, 1995.

*Lawrence R. Jones* for plaintiffs (*Keith, Winters & Wenning,* attorneys).

*Chen Kornreich* for defendants (*Kornreich & Harkov*, attorneys).

FISHER, J.S.C.

# I

## *THE ISSUE*

To what extent are grandparents permitted to participate in an adoption action commenced by the child's stepparent? Nothing definitive has been said by either our courts or Legislature on this subject.[1] This unsettling problem arises frequently and was initiated in this case by the filing of a motion to consolidate the maternal grandparents' visitation action with the stepparent's adoption action.

# II

## *THE FACTS*

R.K. and L.K. ("the grandparents") were the parents of S.B., who was married to A.J.B. in 1982; on January 3, 1990, S.B. and

---

1 A number of other jurisdictions have considered the issue and have reached a variety of conclusions based upon their own particular adoption legislation. *Compare, Puleo v. Forgue*, 610 A.2d 124, 126 (R.I.1992) (grandparents not entitled to notice or right to intervene in an adoption proceeding brought by a step-parent); *Mead v. Owens*, 149 Ga.App. 303, 254 S.E.2d 431 (1979) (semble); *In re Watson's Adoption*, 45 Haw. 69, 361 P.2d 1054 (1961) (semble); *with In re Adoption of a Minor Child*, 593 So.2d 185, 189 (Fla.1991) (grandparents entitled to notice and right to intervene in an intra-family adoption); *Brown v. Meekins*, 278 Ark. 67, 643 S.W.2d 553 (1982) (grandparents entitled to notice and right to intervene in an intra-family adoption if they previously obtained court-ordered visitation). Decisions from other jurisdictions have recognized the right to notice and intervention if there has been a showing that the evidence from the grandparents would impact upon the best interests of the child. *In Interest of Brandon S.S.*, 179 Wis.2d 114, 507 N.W.2d 94, 107 (1993); *In re Adoption of Taylor*, 678 S.W.2d 69, 72 (Tenn.Ct.App.1984); *In re Ivarsson*, 60 Wash.2d 417, 374 P.2d 179 (1962); *In re Berman's Adoption*, 44 Cal.App.3d 687, 118 Cal.Rptr. 804 (1975).

A.J.B. adopted a one-day old child who became known as S.B.B. ("the child"). The child is now five years old.

Tragically, S.B. died on August 17, 1993. On November 12, 1994, A.J.B. married H.B.; H.B. now seeks to adopt the child.

## III

### *THE APPLICATION*

The grandparents seek an order confirming their claimed visitation rights, H.B. seeks to adopt the child, and the grandparents seek to consolidate both actions.

 While the adoption and grandparent visitation statutes have been frequently revised, it remains unassailable that an adoption by a stepparent cannot, standing alone, extinguish a grandparent's statutory right to visitation.[2] *Mimkon v. Ford,* 66 *N.J.* 426, 332 *A.2d* 199 (1975). It initially appeared from the motion papers that an order of consolidation was sought by the grandparents to avoid destruction of their visitation rights. At oral argument, however, A.J.B. and H.B. agreed that the latter's adoption of the child in and of itself would not destroy any visitation rights possessed by the grandparents.

Rather, the grandparents seek consolidation to obtain an opportunity to be heard in opposition to the adoption. The grandparents are obviously upset over what they view as an "extremely short courtship", observing that A.J.B. and H.B. met in February 1994 and wed nine months later. They claim to be "extremely

---

[2] *Thompson v. Vanaman,* 212 *N.J.Super.* 596, 515 *A.2d* 1254 (App.Div.1986) and other cases which have held that no right to grandparent visitation arises in . the absence of a disruption of the child's family unit were based upon a version of *N.J.S.A.* 9:2–7.1 which was subsequently repealed. Prior to amendment, *N.J.S.A.* 9:2–7.1 commenced with the following: "[w]here either or both of the parents of a minor child ... is or are deceased, or divorced or living separate and apart ...". The 1993 amendment eliminated this language and abrogated *Thompson* 's holding. A grandparent's right to visitation now exists notwithstanding the integrity of the child's family unit.

alarmed at the swiftness" of H.B.'s action for adoption, asserting that H.B. has known the child "for barely a year" [3] and are in "extreme fear that [H.B.] is subordinating the best interests of [the child] to her own self-interest in attempting to impair [the child's] relationship with her grandparents and other family members of [the child's] deceased mother." It is evidence of this nature that the grandparents will offer at the adoption hearing, if permitted. While the grandparents expressly seek consolidation, in reality they seek to intervene, and their entitlement to any relief will be considered in that light.

## IV

### *STANDING*

The pending motion, at its heart, raises the question of whether the grandparents have standing to object to the child's adoption by her stepmother. In resolving the issue, consideration must be given to both the statutory and court rule fonts of standing.

#### A. *Statutory Standing*

In considering the class of persons who may be heard in opposition to an adoption, one must first look to *N.J.S.A.* 9:3–45. Subsection a of that statute directs that "each parent of the child to be adopted" must be given notice of the action. A natural parent's right to notice is one of constitutional dimension. *Armstrong v. Manzo,* 380 *U.S.* 545, 85 *S.Ct.* 1187, 14 *L.Ed.*2d 62 (1965).

*N.J.S.A.* 9:3–46b creates another class of persons who are entitled to notice, *i.e.,* a "guardian of a child to be adopted who has not executed a surrender pursuant to [*N.J.S.A.* 9:3–41] and any other person who has provided care and supervision in his [or her] home for the child for a period of six months or one half of the life of the child, whichever is less, in the two years prior to the complaint."

---

[3] Ironically, the grandparents allege that their daughter and son-in-law knew the child for only one day when she was adopted in 1990.

Neither of the grandparents is a parent of the child, nor her guardian, nor are they persons who have provided care or supervision "in [their] home" to the child within the time period referred to in *N.J.S.A.* 9:3–46b.[4] This is important to recognize, because the first sentence of *N.J.S.A.* 9:3–46a states: "A person who is entitled to notice pursuant to [*N.J.S.A.* 9:3–45] shall have the right to object to the adoption of his child." Further, *N.J.S.A.* 9:3–46b states that the persons described therein "shall be given notice of the action and in accordance with the Rules of Court shall have standing to object to the adoption, which objection shall be given due consideration by the court in determining whether the best interests of the child would be promoted by the adoption."

It would seem to follow that one who is *not* entitled to notice of the proceeding is one who is *not* provided, by the Legislature, with the right to object. If that is so, then the grandparents have no standing to object to the adoption and whether there will be an adoption will turn on the record created in a hearing from which they will be excluded. That would appear to be so, subject only to one other reservoir of the right to standing mentioned by the Legislature: the rules of court.

### B. *Rule-based Standing*

The rules of court permit a discretionary widening of the class of persons who may object to an adoption. *R.* 5:10–5(b), in part, states:

> At any time during or after the preliminary hearing, the court may require the production of additional testimony, may subpoena additional witnesses, *or may direct that notice of the proceeding shall be given to any persons whose interests may be prejudiced or affected by the entry of a judgment of adoption.* (Emphasis added.)

While the adoption cannot eliminate the grandparents' visitation rights, *see, Mimkon, supra,* it could arguably "affect" those rights, since *N.J.S.A.* 9:2–7.1b(8) allows the court to consider "any other

---

[4] The grandparents state in their motion papers only that the child "actually resided with [them] for a month in February of 1994." That clearly is not one-half of the child's life nor a period in excess of six months.

factor relevant to the best interests of the child". Accordingly, in considering whether standing should be afforded to others, the court should look to the type of proofs the opponent of the adoption wishes to offer, as well as the opponent's relationship to the child and the person or persons who seek or support the adoption.

In opposing the adoption the grandparents have complained, in essence, that their son-in-law remarried too soon; they appear concerned that their deceased daughter will soon be a distant memory to the child. How their concerns, if founded, will be remedied by the defeat of the adoption is not at all clear.

The grandparents may be tilting at windmills. It seems unlikely that this factor alone could support a finding that the adoption would not be in the best interests of the child. Whether or not the adoption occurs will not change the fact that the child will remain in the care and custody of A.J.B. and H.B. In short, the grandparents' concerns would not necessarily be dissipated by the defeat of the adoption. Indeed, the grandparents' opposition to the adoption carries potential disadvantages, in that it may be unlikely to engender the cooperation of A.J.B. and H.B. in keeping the child's memory of her late mother alive (assuming the grandparents' worries in that regard are founded), nor would one likely expect, human nature being what it is, any cooperation from A.J.B. and H.B. in the facilitating of the grandparents' visitation with the child.

Nevertheless, R. 5:10–5(b) imbues the court with the discretion to expand the scope of the hearing to ensure the presentation of all the evidence available for a determination that the "best interest of the child would ... be promoted by the adoption." N.J.S.A. 9:3–48b. In determining whether there should be an expansion of the adoption proceeding, the inherent limits of the probity of the testimony of the grandparents should be considered. Another consideration involves the social policies impacted by the position taken by the grandparents.

There may be quite valid reasons why our Legislature did not expressly provide grandparents with the right to intervene, as one court recognized in examining California's statutory approach:

A stepparent's relation to the [parents] of the spouse, whose place the stepparent is taking, is a rather delicate one and perhaps it is just as well that the Legislature has not provided that the grandparents may appear in a proceeding in which a third party is taking the place of their daughter or son as the parent of their grandchild.

*Berman, supra,* 118 *Cal.Rptr.* at 808. But our Legislature, by incorporating the rules of court, intended that the scope of parties who are entitled to notice and an opportunity to be heard—beyond those expressly mentioned in the statute—should rest with the discretion of the courts. That discretion should be exercised in favor of expanding the class of persons who may be heard when such an expansion could potentially clarify what is in the best interests of the child.

Our Supreme Court has recognized the significant role grandparents play in the lives of children, particularly in circumstances such as those presented in this case:

It is not only the ordinary devotion to the grandchild that merits the grandparent's continued right to be with him, but also the fact that in such cases, the continuous love and attention of a grandparent may mitigate the feelings of guilt or rejection, which a child may feel at the death or separation from a parent, and ease the painful transition.

[*Mimkon, supra,* 66 *N.J.* at 437, 332 *A.*2d 199].

*See, generally,* Zablotsky, "To Grandmother's House We Go: Grandparent Visitation After Stepparent Adoption", 32 *Wayne L.Rev.* 1 (1985); Note, "Grandparent's Statutory Visitation Rights and the Rights of the Adoptive Parents", 49 *Brooklyn L.Rev.* 149 (1982); Foster and Freed, "Grandparent Visitation: Vagaries and Vicissitudes", 23 *St. Louis U.L.J.* 643 (1979). The "human truth" observed by the Court in *Mimkon,* and the equally recognizable importance which the stepparent will now have in the child's life, have been put in conflict in these matters. Certainly both positions can be adequately vindicated if an atmosphere of cooperation, for the benefit of the child, is permitted to envelop their relationships.

■ There is a legitimate concern that the grandparents' intervention into the adoption proceeding will be counterproductive to this goal. Nevertheless, the grandparents have initiated this conflict, and while it is undoubtedly true that the conflict itself is not in the best interests of the child, it cannot presently be said at this preliminary stage that the position which the grandparents seek to vindicate is inconsistent with the child's best interests. It is better to allow them to come forward with their proofs, even when that evidence may not have a significant impact upon the ultimate issue, than to shut the courtroom doors on them.

Regardless of its apparent limitations and likely ineffectualness, as well as its potential harm to the various intra-family relationships involved, the weight of the grandparents' proofs should be adjudged at the hearing, not now. The ultimate issues raised in these cases should be resolved by the court's determination as to what is in the best interests of the child. All arguably relevant evidence on that subject should be welcomed and not excluded by the acceptance of a narrow view of standing. *R.* 5:10–5(b) provides the court with the discretion to expand the scope of the hearing and that the court will do. The rules of court also provide the court with the means to insulate the child from this conflict and that the court will also do.

## V

## *CONCLUSION*

■ The motion for consolidation will be denied, but the grandparents will be permitted to intervene and present relevant evidence at the adoption hearing. Because the grandparents' visitation action will not be barred if the adoption occurs, there is no reason why both issues should be resolved based upon a record made at the same hearing. While the parties may be called upon to testify at both hearings, the overlap of the testimony at those hearings will not be so substantial as to suggest that any particular advantage will be gained through consolidation. It is preferable that there be separate hearings so that the focus on each

important issue will not be blurred by the confluence of all the testimony on both subjects at one sitting.

Of course, it is certainly appropriate to have both matters resolved by a single judge [5], *accord, Salch v. Salch,* 240 *N.J.Super.* 441, 444, 573 *A.*2d 520 (App.Div.1990), and that will be so ordered.[6] In addition, for the convenience of the witnesses who will testify in both matters, the hearings in both cases will be held the same day.

Another benefit derived from leaving the matters apart, and trying them sequentially, is presented. The child should be present at the adoption hearing, *cf., N.J.S.A.* 9:3–49, but not necessarily at the visitation hearing. Certainly, subjecting the child to the quarrels between the parties may, to some degree, be unavoidable. But the court's intent to spare the child from the potentially bewildering consequences of the contest between the parties, *see, e.g., Tahan v. Duquette,* 259 *N.J.Super.* 328, 336, 613 *A.*2d 486 (App.Div.1992), will be more easily sustained by keeping the hearings separate.

In advance of these hearings, the court will hold a status conference at which time the parties should be prepared to discuss, among other things, their positions on whether the circumstances require either the appointment of counsel for the child, *R.* 5:8A, or a guardian *ad litem* for the child, *R.* 5:8B, or both. *See, In re Adoption by J.J.P.,* 175 *N.J.Super.* 420, 429, 419

---

[5] The adoption and visitation cases had been assigned to different judges.

[6] The principal salutary goals of consolidation, *i.e.,* the avoidance of inconsistent rulings and the conservation of judicial resources, *see, Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.Super.* 143, 144, 85 *A.*2d 545 (Ch.Div.1951), are attained even though the formal joinder of these two actions will not occur. Another significant disadvantage to consolidation went unmentioned by the parties but is readily apparent upon reflection. The judgment and all pleadings and other relevant documents in an adoption proceeding are to be filed "under seal" by the clerk of the court. *N.J.S.A.* 9:3–51, 52. Formally joining these two cases will have the inappropriate effect of either sealing the file in the grandparents' visitation action or, of even greater concern, inadvertently causing the lifting of the seal of confidentiality in the adoption matter. To avoid the danger of either event, it is better that the cases not be formally consolidated.

A.2d 1135 (App.Div.1980); *In re Mercado Adoption,* 182 *N.J.Super.* 628, 631, 442 A.2d 1078 (App.Div.1982). The issue of who will bear the cost if such an appointment is made will also be considered at that time.

An order has been entered memorializing the above.