[Civ. Nos. 15441, 15466. Second Dist., Div. One. Apr. 18, 1947.]

Adoption of JO ANN BERTH, a Minor. TRINIDAD ROMAN et al., Appellants, v. ROMULO DORADO et al., Respondents.

David C. Marcus for Appellants.

Derthick, Cusack & Canahl for Respondents.

DORAN, J.—The record discloses that Jo Ann Berth, whose adoption is the subject of this appeal, was born in Los Angeles on January 2, 1936; that both mother and father of the minor are dead, and that on December 7, 1939, the father placed the child to live with the appellants Roman (no relation), since which date Jo Ann has spent practically the entire time as a member of the Roman household. On July 6, 1940, the Romans filed a petition for adoption; on May 7, 1941, letters of guardianship were awarded to the Romans; on June 3, 1943, an-

other petition for adoption was filed by the respondents Dorado, the child's aunt and uncle who had recently moved here from the East.

In reference to the original Roman petition for adoption, the State Department of Social Welfare reported favorably, recommending the adoption and stating that the "minor is a happy well-adjusted child, well cared for by petitioners who meet her every need." At the date of this report, May 1, 1944, Trinidad Roman was aged 53 years, and Rita Del Rio Roman, aged 55. The report further showed that the Romans were in good health, that Trinidad Roman operated a small grocery store, that neither the husband nor the wife spoke English; that both parties were of good moral character, and maintained a suitable home.

Reports filed after investigation of the Dorado adoption petition disclose that these petitioners were of the age of 29 and 22 years respectively on January 17, 1946; that the Dorados owned their own home, that Romulo Dorado was gainfully employed; that the child had lived at the Dorado home for approximately two and one-half months only; that "petitioners' home appears to be adequate for their needs at this time. It is neat and clean and petitioners' own children appear to be receiving good care." No recommendation for or against adoption by the Dorados was made by the State Department of Social Welfare. At the hearing of the Dorado petition that Ida Dorado was the paternal aunt as well as the godmother of the child; that Mrs. Dorado and a sister has come from Massachusetts "for the specific purpose of looking after these children," (Jo Ann and a sister). According to the testimony of the parish priest, Jo Ann attended a Catholic school where "Her conduct has been perfect. . . . I have noticed that she was treated (by the Romans) as one of their own."

Both petitions asking for the adoption of Jo Ann Berth came on for hearing in the same department of superior court on January 21, 1946, but were heard separately. The Roman petition was first on the calendar, and after hearing the evidence the trial court denied such petition, saying: "I want it distinctly understood, however, it is no reflection whatsoever upon these very good people who have taken excellent care of the child." The court thereupon immediately proceeded to hear the Dorado petition, and upon conclusion of the proof ordered that the child be adopted by the Dorados. The reasons for making this order are stated by the trial court as follows:

"I have this child's welfare at heart, and I want to see her grow up to be a good, decent American citizen. I think if these aunts were not here, I think the Romans could equally look after her, but here these younger people coming along, related to the girl by blood, and going a step farther, the petitioner here being the godmother of the child, it seems to me there is only one thing the court can do and that is to give custody of the child to Mr. and Mrs. Dorado." The Romans have filed appeals from the order granting the Dorado petition as well as from the court's order refusing to permit Mr. and Mrs. Roman to adopt Jo Ann.

The records indicate that the various parties and their respective attorneys, as well as the child, were all present at the separate hearings of the two petitions; that although no formal contest or objections were filed, each attorney participated to some extent in both hearings, without, however, cross-examining witnesses, or introducing evidence except that offered to support each separate petition. At the hearing of the Roman petition, the attorney for Mr. and Mrs. Dorado was, in fact, refused the right of cross-examination. At the conclusion of the Dorado hearing, the then counsel for the Romans seems to have contended that the trial court should not decide the Dorado matter until a proposed appeal from the Roman order had been decided, and that during that period Mr. and Mrs. Roman should retain custody of the child. This the court refused to sanction.

■ The question on appeal is stated in appellants' brief as follows: "In the event two petitions be pending at the same time to adopt the same child, are they to be considered adverse to each other and thereby be consolidated, or joined together and tried together, or must the court hear the petition filed first, separate and apart from the petition filed later, and make judgment in the first proceeding, and allow the time to appeal therefrom to elapse or if appeal be taken, to be finally determined before hearing and adjudging another petition for adoption of the same child?" The respondents' brief asserts that appellants have presented two points: "First: that the court below had no jurisdiction to make its decree of adoption in case No. 15466 (the Dorado petition) because they (the Romans) still have the right of appeal in case No. 15441. (The Roman petition which was denied) . . . Second: . . . an abuse of discretion."

The appellants' brief states that "The only case petitioner has found in any jurisdiction in the United States with

statutes similar to California's is—*In Re Bewley* (1916), 167 Cal. 8 [138 P. 689], where appellant raises the question of a contest between two adoption petitioners, but the Court did not decide the question." In the Bewley case the court held that "There was no necessity for a formal contest of the petition . . . as a prerequisite to the taking of the testimony. The matter of adoption rests in the sound discretion of the court and in the exercise of that discretion information from all proper sources should be sought. . . . No higher discretion than this is vested in a court. After all of the formalities prescribed by the statutes have been complied with, the court must make the order that the child shall thenceforth be treated as the child of the adopting petitioner only 'if satisfied that the interests of the child will be promoted by the adoption.' (Civ. Code, sec. 227.)'" This decision is obviously against and not for the appellants' contentions. That the law therein stated is correct, there can be no doubt.

Nor is there any statutory provision concerning adoption which would justify the trial court in doing other than what was done in the instant case,—i. e., deciding each petition upon its merits in the order that such matters were presented to the court. Appellants' argument that the trial court should have held in abeyance a decision of the Dorado petition until an appeal from the adverse decision in the Roman case had been decided, is not fortified by anything in either statutory or case law. The suggestion, therefore, would be more appropriately presented to the legislative than to the judicial branch of the government.

All of the formalities prescribed by the statutes in reference to adoption of children appear to have been complied with; the trial court took the testimony of all parties and apparently made a searching examination of the facts as presented by the reports of the State Department of Social Welfare in each case. It is also apparent that the difficulty of choosing between two suitable and proper homes for the child was duly appreciated; as said by the trial judge, "these adoption cases are always bitter, particularly when we have people such as these people who, in good faith, have raised this child." Nor does the record disclose any indication that the child was, as suggested by appellants, "permitted to be bartered around as a chattel," but quite the contrary.

It is insisted by appellants that "There was indeed a great abuse of discretion . . . in taking this child away from the only persons who had afforded her a home, the loving

care and attention of devoted foster-parents. . . . The security afforded her by the protection of these people, the Romans, certainly outweighed any advantage that could be gleaned from the record . . . in behalf of the Dorados.'' The alleged abuse of discretion is further predicated upon the fact that the trial court did not follow the recommendation of the State Department of Social Welfare that adoption be granted to the Romans; and that the court disregarded the wishes of the child who stated, ''I do not want to go with you folks,'' (the Dorados). The record would indicate that the trial court considered these matters which, however, were not necessarily controlling. And, as commented on in respondents' brief, ''the court in rendering its decision took into account the age of this child and the age of the petitioners (Dorado) . . . more naturally suited . . . than the Romans who were in their middle fifties; that the Romans could not speak English and that they were of course no relation by blood,'' and that Mrs. Dorado was the child's aunt and godmother.

As has been said in *In re Fahlman,* 84 Cal.App. 248, 251 [257 P. 893], and elsewhere, ''it would require a very clear case of the abuse of the judicial discretion vested in the trial court to authorize the appellate court to set aside an order of adoption. . . . An appellate court is confined to the record and when the record shows nothing reflecting upon the persons to whom the letters have been awarded, an appellate court cannot declare the determination of the trial court erroneous, even though all the persons opposing the granting of the letters may likewise be fit and proper persons to whom adoption letters might be granted.'' The Fahlman case was cited with approval in *In re Hickson,* 40 Cal.App.2d 89, 93 [104 P.2d 411].

Neither in appellants' brief nor in the record does anything appear to indicate an abuse of discretion in respect to the order of adoption granted on the Dorado petition, nor in reference to the denial of the Roman petition. Not only was the matter discretionary in nature, but as said in *In re Bewley,* 167 Cal. 8, 10 [138 P. 689], ''No higher discretion than this is vested in a court.'' Finding no abuse of this discretion, and no irregularity of procedure, the orders appealed from are and each of them is, affirmed.

York, P. J., and White, J., concurred.