[Civ. No. 6483.   Fourth Dist.   Apr.   21, 1961.]

Adoption of BABY GIRL EMERY, a Minor.   PEGGY LU-
CILLE OFFILL et al., Appellants, v. COUNTY OF
SAN DIEGO DEPARTMENT OF PUBLIC WEL-
FARE, Respondent.

John T. Schall for Appellants.

Henry A. Dietz, County Counsel, and Duane J. Carnes, Deputy County Counsel, for Respondent.

GRIFFIN, P. J.—On March 20, 1959, petitioners and appellants Peggy and Donald Offill, husband and wife, filed a petition for adoption of Baby Girl Emery, also known as Janice Irene Offill, who was born February 19, 1959, in San Diego, alleging that the natural mother was Susan E. Emery and that the natural father was unknown; that on February 21, 1959, said minor was given into the custody and control of petitioners by the natural mother and has resided with them ever since; that they furnished necessary food, clothing and care for her, and that petitioners request the Department of Public Welfare of San Diego County (Adoption Division) to report thereon and obtain the necessary written consent from the natural parent prior to their obtaining a decree of adoption.

Notice of the filing of the petition was given to the welfare department. On December 16, 1959, the natural mother signed and filed therewith a consent to the adoption, which was approved by the welfare department agent. The welfare department, in conformity with Civil Code, section 226, made a lengthy report and recommended the adoption by petitioners.

On January 15, 1960, the court, after hearing, signed a decree of adoption. On April 19, 1960, the same welfare department petitioned the court to set aside the decree of adoption on the ground that it was procured by fraud and misrepresentation practiced by petitioners in that they had represented that their marriage was a stable and harmonious one, when in truth and in fact it was not; that immediately after the granting of the decree, Mrs. Offill filed an action for divorce in the Superior Court of San Diego County, and petitioners were guilty of failure to report relevant facts to the agency in that they failed to advise it concerning a separate maintenance action filed by Mrs. Offill against Mr. Offill on or about August 13, 1958, and because of certain other claimed misrepresentations. The petition to set aside the decree recites that the history of the woman petitioner demonstrates that she is not a proper person to have sole custody of the child, in that she has been married to seven men; that she is employed as a dancer and entertainer and, accordingly,

her custody would not be conducive to the best interests of the child; that on or about April 12, 1960, the court made its order removing the child from the care and custody of both parties to the divorce action and placing the child in the custody of the probation officer. It is then alleged that the decree of adoption was procured by petitioners by the mistake, inadvertence, surprise and excusable neglect of the welfare department and was obtained by fraud and misrepresentation. An order to show cause why the decree should not be set aside, and why said minor should not be committed to the care of the department of public welfare under Civil Code, section 226c, was issued on April 19, 1960.

On May 20, 1960, the natural mother filed a petition in said proceeding for permission to withdraw her consent to adoption on the ground that she was emotionally upset when she signed the consent for adoption; that she did not know that Mrs. Offill had been previously married more than one time; and that had she known these facts, she would not have signed the consent for adoption. She stated that she has married since the time she signed the consent and now desires to regain custody of the child.

On May 24, 1960, after hearing, the court made an order setting aside the former decree of adoption on the ground that it was procured by fraud and misrepresentation practised by petitioners upon the Department and the court, in that they represented that their marriage was a stable and harmonious one when in fact it was not; that on January 19, 1960, Mrs. Offill filed an action for divorce and both parties were granted a decree of divorce on the ground of extreme cruelty. It further stated that the decree of adoption was obtained through mistake and excusable neglect on the part of the welfare department, under Code of Civil Procedure, section 473, and found that this action was taken on the court's own motion as well as upon the petition of the welfare department. The petition for adoption was denied.

Petitioner, Mrs. Offill, filed a notice of appeal that "respondents" appealed from the judgment entered.

At the outset, appellants contend that the court had no jurisdiction, under Code of Civil Procedure, section 473, *supra*, or otherwise, to set aside the order of adoption, either on its own motion or on motion of respondent, since it was not a party to the adoption proceedings. No authority directly in point has been cited by either party and our search reveals none.

In *In re Johnson,* 7 Cal.App. 436, 439 [94 P. 592], it is said that in an application under Code of Civil Procedure, section 473, *supra,* said section is to be liberally construed as a remedial statute; that:

"In applications for relief under section 473 of the Code of Civil Procedure, made within a reasonable time, no distinction is to be made between extrinsic or other fraud. Fraud or its equivalent, whether upon the court or a party or *one so situated as to be held in law an adversary,* is sufficient to warrant relief." (Italics ours.)

In *In re McGrew,* 183 Cal. 177 [190 P. 804], it was held that the father of an illegitimate child, who has adopted it in the manner provided by Civil Code, section 230, has the necessary legal status to authorize him to maintain a proceeding to vacate an order of adoption made without his knowledge. Likewise, in *Bell* v. *Krauss,* 169 Cal. 387 [146 P. 874], it is held that a father who has been so deprived of the custody of his child by an order in an adoption proceeding may obtain relief from the order either by a timely motion in such proceeding under Code of Civil Procedure, section 473, *supra,* or by an independent action to set aside the order. In *Miller* v. *Higgins,* 14 Cal.App. 156, 163 [111 P. 403], a question arose in an adoption proceeding as to the right of a divorced husband and father of a minor child to receive notice of adoption proceedings. The court there held that he was an interested party and set aside the order of adoption, saying the record discloses that:

". . . but for the concealment of the facts referred to it would not have made this decree of adoption in the first instance. Such concealment of facts affords ground for relief in equity. [Citation.] It is clear that the parties to the adoption proceedings concealed from the superior court the facts relative to the action of the superior court of Contra Costa county, and upon which facts the jurisdiction of the superior court of Los Angeles county depended. *This was a fraud upon the court.*" (Italics ours.)

*In re Yoder,* 199 Cal. 699 [251 P. 205], held that under Code of Civil Procedure, section 473, *supra,* an order for adoption of minors may be set aside and vacated on the grounds of fraud, mistake, inadvertence, surprise or excusable neglect.

In the instant case, the natural mother petitioned the court in the adoption proceedings, alleging fraud in obtaining her consent. It would therefore follow that if the natural mother

had the authority to petition the court to set aside the order of adoption, the court itself would have the jurisdiction and authority to entertain such a petition of the Department of Public Welfare of the County of San Diego, an agency licensed by the State Department of Social Welfare. Civil Code, section 226, provides that notice of pendency of adoption proceedings be given the department in such a proceeding as this and it further requires the consent of the natural parents to the adoption, which consent, before it is effective, must be signed in the presence of an agent of said department after investigation and favorable report thereon. In effect, in certain adoption proceedings (see Civ. Code, §§ 224m, 226 and 226a) the department is representing the interests of the child and is authorized to appear before the court for this purpose.

We conclude that this interest is sufficient to authorize it to bring before the court in an adoption proceeding notice of claimed fraud or misrepresentation practised upon it by any party to the adoption proceeding which would give the court jurisdiction to act. (*In re Malloy,* 185 Cal.App.2d 135 [8 Cal.Rptr. 143]; *Raines* v. *Damon,* 89 Cal.App.2d 812 [201 P.2d 886]; *Olivera* v. *Grace,* 19 Cal.2d 570, 573 [122 P.2d 564, 140 A.L.R. 1328]; *Miller* v. *Miller,* 26 Cal.2d 119, 121 [156 P.2d 931]; *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184, 187 [222 P.2d 867].)

It does not appear from the record whether the trial judge ruled on the natural mother's petition to withdraw her consent to the adoption on the ground that it was obtained while she was emotionally upset and that she knew nothing of the background of the adopting parents. However, this question is not before us.

The notice of appeal recites that respondents appealed from the judgment setting aside the decree of adoption. It is signed only by Mrs. Offill. Nevertheless, rightfully or wrongfully, we have included Mr. Offill as one of the appellants herein for the purpose of this decision.

SUFFICIENCY OF EVIDENCE OF FRAUD, MISREPRESENTATION AND MISTAKE

The record shows that appellants were married in Las Vegas, Nevada on March 16, 1958. This was the eighth marriage for Mrs. Offill and the second for Mr. Offill. He was divorced from his former wife and was supporting her and their two children. He, at the time, was a police patrolman

and he also worked other hours with a transfer firm in order to support the two families. The second Mrs. Offill was an entertainer or showgirl. In a report to the welfare agent, it is revealed that on December 15, 1959, Mrs. Offill, who was born in 1925, reported six prior marriages at that time, the first being August 11, 1940, and stated their disposition, two by annulment, one by death and the remainder by divorce. Apparently there were seven prior marriages but whether the omission of one additional marriage would be particularly material is open to question. A child was born to her as a result of one of these marriages and that child resides with its father. Mr. Offill, born in 1921, reported one previous marriage in 1940, with two children who reside with their mother in San Diego and to whom he was paying $200 per month for support. In August 1959, the suspicions of the department of public welfare were aroused as to the stability of petitioners' marriage and home based upon new discoveries pertaining to petitioners' marital histories. Mrs. Offill, on August 1, 1958, commenced a separate maintenance action against Mr. Offill, alleging extreme cruelty on the part of defendant and charging that he slapped her. Subsequently, this action was dismissed on May 4, 1959. This proceeding was not mentioned by the parties in the first interview with the welfare worker and no mention of it was made in the report. It also appears that there were previous marriages which petitioners did not reveal in their original application form. They now claim that they withheld this information because they did not think it was necessary to give it. It appears that thereafter the parties were questioned about it. Without the knowledge of the welfare department, Mrs. Offill, after a quarrel with her husband, about June 1959, left San Diego in her car with the child and went to Kansas, under the claim that she wanted to see her relatives. She sold her car in Riverside en route. After being in Kansas for some time, she remembered that the welfare worker was supposed to make her usual call at her home and she telephoned the department and told them she was in Kansas on a visit and would return soon. She was gone over four weeks and then returned. The welfare worker, in the telephone call, inquired of her if this absence indicated some marital discord and Mrs. Offill denied it and claimed her husband freely consented to the trip. She further stated that all their previous problems and difficulties had been resolved. When she was interviewed again on her return to San Diego, she reaffirmed her statement and Mr. Offill agreed with her at

that time. Later, he testified that they did have a quarrel, particularly over the expense of the trip, but said she went to Kansas anyway.

Upon these facts related, and believing their marital problems had been resolved, the welfare department consented to the adoption and the decree was obtained on Friday, January 15, 1960. The following Tuesday Mrs. Offill filed a divorce action against Mr. Offill, alleging that she was a fit and proper person to have custody of the adopted child; that since the marriage defendant had treated plaintiff with extreme cruelty, wrongfully inflicting upon her great and grievous mental pain and anguish and sought custody of the child and support money and asked that her husband be removed from their home. On the filing of this complaint, Mr. Offill appeared before the welfare agency and said that in his former statement he had "lied through this adoption investigation"; that he and his wife had actually been having marital trouble; that he had obtained the baby after advice from a doctor that it might help his wife's emotional problems; that all through the time they had this child "things were not going well," but that he "wanted to see it through," and he had hoped it would work, and for this reason he had not shared with the welfare department the "episodes" they had been having and in particular the reason behind the Kansas trip; that he did not want to take this trip with her on account of the money and time involved, but she insisted on going and sold the car, and that he found a note to the effect that "nobody could tell her what to do," and that she was "going anyway"; that just a few days prior to the adoption he questioned her as to her future intention about being a permanent wife to him and mother to the child and she assured him that this was her intention.

In his answer and cross-complaint to the divorce action, he alleged that Mrs. Offill was unfit to have custody of the child and that since their marriage plaintiff had treated him with extreme cruelty.

The pretrial order stated the issue to be the question of a divorce and custody of the minor, and attention was directed to a memorandum of Judge Levenson in respect to a possible fraud perpetrated upon the court. After hearing the testimony in the divorce action, the trial judge in that action granted an interlocutory decree of divorce to each of the parties upon the grounds stated and found that neither party was a proper

person to have custody of the child and ordered the child placed in the protective custody of the probation officer for further proceedings which resulted in the present action.

The testimony of Mr. and Mrs. Offill in explanation of their actions now indicates that they expect, and are endeavoring, to become fully reconciled before the time for the obtaining of the final decree of divorce; that although they had the usual family differences over Mr. Offill's minor son's being jealous of his stepmother when he visited them, there never was any physical cruelty, other than the time he slapped her, prior to the action for separate maintenance; that he is at the present time taking his wife to a psychiatrist, with some beneficial results; that they both have great affection for the baby and cared for her quite properly; that although he told the welfare worker he had lied in his previous interviews, he did so only because he wanted custody of the child in the divorce action and he could never say his wife was unfit; that they had an altercation the day after the adoption proceeding and his wife moved out and the next day divorce papers were served on him.

In summarizing the evidence, the trial judge, in a reported opinion, recited the evidence produced and concluded that the child was taken care of in a proper manner while with its foster parents but that that was not the issue; that the question was whether there was fraud practised on the court and the welfare department, and as a result of which there was a mistake or inadvertence committed excusable under Code of Civil Procedure, section 473, *supra,* which could be corrected by this proceeding; that many of the facts were eventually related to the welfare department which department reported these facts to the court, but with this background of unhappy differences, which would justify a denial of their petition for adoption, he believed that unhappy differences did exist over a period of time between them and that if the department or the court had been apprised of the true facts by the parties as to the true status of their marriage relationship, the department would not have approved the adoption; that Mr. and Mrs. Offill withheld from it and the court material facts and it believed the woman petitioner had a secret intent all of the time that if the adoption did go through she would sue for divorce and obtain custody of the child.

While the record of the testimony of Mr. and Mrs. Offill in their divorce action in obtaining a divorce on the ground of extreme cruelty is not before this court and if produced would

have probably shed light on the true situation, the verified complaint is part of the record on this appeal and we will assume its truth.

We are convinced that there was sufficient evidence to authorize the court to grant the relief prayed for and to enter a judgment setting aside the former judgment and denying the petition for adoption.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.