[Civ. No. 15422. Fourth Dist., Div. Two. Dec. 22, 1975.]

C. GALE REEVES et al., Plaintiffs and Appellants, v.
ROBERT BAILEY et al., Defendants and Respondents.

**COUNSEL**

Anderson & Taves and John D. Taves for Plaintiffs and Appellants.

Max E. Henry for Defendants and Respondents.

**OPINION**

**GARDNER, P. J.**—This is an appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend.

The complaint alleged:

Plaintiffs, Mr. and Mrs. Reeves, are the paternal grandparents of Kathryn M. Reeves, a minor. Defendants, Robert Bailey and Mary Bailey, are the child's maternal grandparents. Rosemary Bailey is

Kathryn's mother. In a dissolution action between the parents of Kathryn, Rosemary was given her custody. The court also gave the plaintiffs visitation rights with the child, including the right to have the child with them away from the mother's residence at least two evenings per month. Rosemary and her parents live together.

Without notice to plaintiffs, the maternal grandparents adopted Kathryn. Although the adoption was not accompanied by any actual change in the child's living arrangements, defendants now refuse to recognize plaintiffs' visitation rights. Plaintiffs allege the adoption was accomplished solely for the purpose of cutting off their visitation rights and in doing so defendants perpetrated a fraud on the court. They ask the court to set aside the adoption and reinstate their visitation rights.

The court below, in sustaining a general demurrer without leave to amend, purported to act on the authority of *Adoption of Berman,* 44 Cal.App.3d 687 [118 Cal.Rptr. 804].

In *Berman,* the child's maternal grandparents obtained visitation rights following the mother's death and the remarriage of the father. There was friction between the parties and the trial court eventually entered an order giving the father and stepmother complete discretion to determine the nature and extent of grandparent visits. The grandparents appealed from this order. In the meantime the stepmother succeeded in adopting the child without the grandparents learning of the adoption proceedings. Upon learning of the adoption, the grandparents moved to set it aside on grounds of fraud and mistake. This motion was denied and the appeal from the ensuing order was consolidated with the earlier appeal regarding visitation.

In the visitation proceedings the *Berman* court concluded that there was substantial evidence to support the trial court's determination that limitation of visitation would be in the child's best interest and affirmed on that basis.

In the adoption proceedings the court dismissed the appeal. Although not totally free from ambiguity, we construe the court's holding to be, not that grandparents never have standing to attack an adoption, but rather that they lack standing when the only ground for the attack is that they were not given notice of the proceeding. The court quoted with approval the statement that " '. . . when the only objection made by a party is that his consent was not obtained or that he did not receive

notice, there is no necessity for the court to determine such party's standing to maintain an action to vacate the adoption decree if the court holds that such party was not entitled to notice and that his consent was not necessary.' " (*Adoption of Berman, supra,* 44 Cal.App.3d 687, 692.) Having concluded that the grandparents were not entitled to notice of the adoption proceeding, although "the kindly and courteous thing would be to give the grandparents such notice," and considering lack of notice to be their only basis for objection, the appeal was dismissed.

While we have no quarrel with *Berman,* we do not believe it is dispositive of every aspect of plaintiffs' complaint. We will first consider the sufficiency of the allegations as grounds for setting aside the adoption, and then we will discuss the cause of action for visitation rights.

### THE CAUSE OF ACTION TO SET ASIDE THE ADOPTION.

Insofar as plaintiffs' complaint seeks to set aside the adoption on the ground that plaintiffs were not given notice of the proceeding, it is fatally defective, cannot be cured, and *Berman* is controlling.

Also, it must be conceded that plaintiffs' present allegations of fraud are defective for failure to state pertinent facts. However, this defect may be curable by amendment, for we are persuaded that plaintiffs have standing to set aside the adoption for fraud, if indeed a fraud has been perpetrated on the court.

In *Adoption of Emery,* 191 Cal.App.2d 428 [12 Cal.Rptr. 685], a public adoption agency moved to set aside an adoption decree entered three months earlier on the ground that the adopting parents were guilty of fraud in alleging that their marriage was stable and harmonious. The motion was granted and affirmed on appeal. One defense asserted was that the court below lacked jurisdiction to hear the motion because the agency was not technically a party to the adoption proceeding. The court concluded that it was sufficient that the agency had *an interest* in the proceedings, implying that where a fraud was practiced on the court, rules of standing would be liberally construed. (See also *McGuinness* v. *Superior Court,* 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110].) While one purpose—or result—of an adoption is to sever all family relationships with the parent or parents giving up the child and the complete substitution of parents, the basic purpose of any adoption is the welfare, protection and betterment of the child. In adoption proceedings, the

court is to be governed solely by the welfare of the child. (*In re Fahlman,* 84 Cal.App. 248 [257 P. 893].)

Here, plaintiffs, although not parties to the adoption, had an interest in the proceeding.[1] In that respect, their position is comparable to that of the agency in *Emery.* There are many reported cases in which grandparents have been allowed to appear in opposition to an adoption.[2] (E.g., *Adoption of Martin,* 76 Cal.App.2d 133 [172 P.2d 552]; *In re Fahlman, supra,* 84 Cal.App. 248.) Thus, while not *necessary* parties, grandparents are *proper parties.* Here, not only were the plaintiffs grandparents, the court had granted them visitation rights. This is a judicial determination that they were a beneficial influence in the child's life. ■ This combination, the relationship of grandparents, plus the judicially ordered visitation rights, affords a sufficient basis to permit these plaintiffs to attack the adoption for fraud. There is nothing in *Berman* to the contrary.

Since plaintiffs were not given an opportunity to amend, we know only the dim outlines of the case. We do not know what information was presented to the court in the adoption proceedings. We are unaware of the answers to such tantalizing questions as: What is the position of the child's father? Is he dead? Did he consent to the adoption? If so, did he do so to get out from under his parental responsibilities or did he think that it was to the child's best interests that his parents' visitation rights with his child be terminated? Was the adoption actually instituted solely for the purpose of cutting off visitation? Was the adoption merely one more chapter in the depressing story of some quarreling grandparents? Was the investigative agency fully informed of all the facts before it made its report? Did the court know all of the facts? All of these are matters which might be clarified by permitting plaintiffs leave to amend.[3]

[1] Statutory provisions dealing with adoption have been recently and cogently criticized on the ground that failure to afford notice and hearing to all persons interested in the child's welfare may result in an uninformed decision that is not in the child's best interest. (Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law,* 23 Stan.L.Rev. 703, 713-718, 733.)

[2] On the right of holders of visitation rights to seek joinder in custody proceedings under the Family Law Act, see rule 1252, California Rules of Court, as recently amended.

[3] A grandparent adoption involves a consideration not present in most adoptions. A child ordinarily has four lines of inheritance, one from each of his grandparents. In a "normal" adoption the child simply substitutes two new lines of inheritance for the two which he loses. In a grandparent adoption, he loses two lines of inheritance. Thus if the adoption is conceived in fraud, the child usually has suffered a substantial legal loss.

The court erred in sustaining the demurrer to this cause of action without leave to amend.

### The Cause Of Action For Visitation.

██ At this point, the issue is not whether visitation rights are now in the best interest of Kathryn, for no evidence on this point has been presented, nor is the issue whether plaintiffs may seek to obtain new visitation rights. Rather, the issue is whether the visitation rights previously granted were automatically terminated by the adoption. We hold they were not.

If plaintiffs' son, the father of Kathryn, had been deceased at the time plaintiffs' visitation rights were granted, the law is clear that those rights would not have terminated automatically upon the child's adoption by a stepparent or grandparent. (See Civ. Code, § 197.5; *Roquemore* v. *Roquemore,* 275 Cal.App.2d 912 [80 Cal.Rptr. 432].)[4]

In contrast to the relatively detailed provisions of section 197.5 of the Civil Code regarding visitation rights of relatives of a deceased parent,[5] the only statutory provision dealing with visitation rights in other contexts is section 4601 of the Civil Code, which provides: "Reasonable visitation rights shall be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child. In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child." However, since this is a relatively new code section, most of the relevant case law has developed under section 197.5.[6] Since the reasoning of those cases is pertinent to the issue before us, we will discuss two of them briefly.

---

[4]This was the situation in *Berman* and apparently explains why the court there reviewed the merits of the visitation action without discussing any possible effect of the adoption on the visitation rights.

[5]Section 197.5 of the Civil Code, provides:

"(a) If either the father or mother of an unmarried minor child is deceased, the children, parents, and the grandparents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the superior court upon a finding that such visitation rights would be in the best interests of the minor child.

"(b) In granting visitation rights to persons other than the parents of the decedent, the court shall consider the amount of personal contact between such persons and the minor child prior to the application for the order granting them visitation rights.

"(c) This section shall not apply if the child has been adopted by a person other than a stepparent or grandparent. Any visitation rights granted pursuant to this section prior to the adoption of the child shall be automatically terminated upon such adoption."

[6]We do know that while Civil Code section 4601 is part of the Family Law Act, its provisions are not limited to dissolution proceedings. *In re B.G.,* 11 Cal.3d 679 [114

In *Odell* v. *Lutz,* 78 Cal.App.2d 104 [177 P.2d 628], the court held that visitation is basically a parental right in lieu of custody. In *Odell,* the child's mother died, the father remarried and his new wife adopted the child. The natural maternal grandmother then sought visitation rights. Her request was denied and on appeal the court affirmed. The court reasoned that a "natural right" of parenthood, natural or adoptive, is care and custody of the child, and that absent a showing of parental unfitness the court lacks power to interfere with this right. The court held that visitation is such an interference. The theory underlying this reasoning is that visitation is essentially a parental right in lieu of custody. (See *Exley* v. *Exley,* 101 Cal.App.2d 831, 838-839 [226 P.2d 662].) Under this theory, grandparent visitation must therefore be derived from the right of the parent on that side. Thus, when the child by adoption acquires a new parent, all rights derived through the former parent, including grandparent visitation, are extinguished.

However, the rationale of *Odell* was rejected in *Roquemore* v. *Roquemore, supra,* 275 Cal.App.2d 912. There, the parents of the deceased father sought visitation rights following the mother's remarriage. While the petition was pending, and after the grandparents had been granted temporary visitation rights, the stepfather adopted the child. The trial court granted a motion to dismiss the petition on the ground that the adoption had severed all relations between the child and the grandparents. On appeal, the court reversed, quoting from *Estate of Zook,* 62 Cal.2d 492 [42 Cal.Rptr. 597, 399 P.2d 53]:[7] " '. . . the law should not and cannot ignore the fact that an adopted person may not in many respects be cut off from his natural family. If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships. . . .' " (*Roquemore* v. *Roquemore, supra,* at p. 915.) Noting that no statute precluded natural grandparents of an adopted child from seeking visitation rights, the court in *Roquemore* declined to imply any such bar. It indicated that on remand the issue would be whether visitation would

---

Cal.Rptr. 444, 523 P.2d 244] so held and noted that the section is applicable to other cases in which the custody of a minor is at issue. It is also of note that Civil Code section 197.5 was not repealed by the Family Law Act as were most of the provisions in the Civil Code in this field.

[7]*Zook* involved the effect of adoption proceedings in the context of inheritance taxation. Subsequent amendments to the Revenue and Taxation Code have nullified *Zook* insofar as the inheritance tax law is concerned. (*Estate of Dennery,* 52 Cal.App.3d 393 [124 Cal.Rptr. 910].) Nevertheless, its reasoning is still sound insofar as it pertains to the instant issue.

be in the child's best interest and would not unduly hinder the adoptive relationship. It is therefore apparent that the court viewed visitation as a flexible device to promote the child's welfare,[8] rather than a natural right derived from parenthood.

We find the reasoning of *Roquemore* equally applicable here. Adoption has not worked any major change in the child's living arrangements from what they were when visitation was granted. If visitation is no longer in the child's best interest or would unduly hinder the adoptive relationship, this is a matter to be established in a proper proceeding in which all interested parties may participate. No statutory provision automatically terminates visitation rights upon adoption, nor is there any controlling case authority to that effect.

Respondents invite our attention to a New York decision, *People* v. *Rado,* 54 Misc.2d 843 [283 N.Y.S.2d 483], which held that "[a]ll prior temporary orders with respect to custody and visitation were necessarily extinguished by the adoption." This is a good statement of principle in a normal adoption where the child receives two new parents and both of the natural parents and their families are substituted out.[9] Where this is not so, however, the principle loses its rationale and will not be blindly or mechanically applied, as indicated by *Roquemore.* It is not blindly or mechanically applied in New York, as indicated by the more recent decision in *Scranton* v. *Hutter,* 40 App.Div.2d 296 [339 N.Y.S.2d 708], which expressly applied the rule and rationale in *Roquemore.* We decline to apply it here.

The court erred in sustaining the demurrer to this cause of action without leave to amend.

The judgment of dismissal is reversed.

Tamura, J., and Kaufman, J., concurred.

---

[8]Indeed, we would observe that visitation is often as important a facet in a child's life as is custody.

[9]Here, the adoption has not effected the change in the child's life which would be experienced in a "normal" adoption. The child still lives with her mother and grandparents except that by a feat of judicial legerdemain her grandparents are now her parents and her mother is her sister. She has simply lost one parent and two grandparents together with any legal rights which might inure to her by reason of those relationships.