[No. F005918. Fifth Dist. June 10, 1986.]

Adoption of LENN E., a Minor.
REGINA E. et al., Petitioners and Respondents, v.
DOROTHY G. et al., Objectors and Appellants.

**[Certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Green, Green & Rigby and Mitchell Rigby for Objectors and Appellants.

Lenore Schreiber for Petitioners and Respondents.

**OPINION**

**HOOVER, J.**\*—This is an appeal brought by a child's maternal grandmother from a decree of adoption conferring parenthood on the child's paternal grandparents. The appeal presents three cognizable issues and a host of emotional, social and moral problems.

A brief factual history of the child's family includes the separation and divorce action of the parents, a contested monetary award to the wife, the proferred testimony of the wife's attorney of her wishes concerning the future care of her child, and the singular calamity of her apparent murder by her husband, the child's father.

After his arrest, the child's father, Peter E., caused his mother, respondent Regina E., to become legal guardian of the child. The father has subsequently

---

*Assigned by the Chairperson of the Judicial Council.

been convicted, sentenced to death and awaits the results of the automatic appeal to the Supreme Court.

During the pendency of these proceedings the child has lived with respondents, with frequent and extended visitation to appellants[1] Dorothy G. and her husband, who, while not related by blood to the child, has been married to appellant since before the child's birth and is referred to by the child as "Grandpa."

In March 1985, the father consented to adoption by respondents. The respondents' petition for adoption was ultimately granted.

A brief history of the litigation in this matter reveals that both appellants and respondents filed petitions for independent adoption of the child. Appellants' petition, filed first, was dismissed by summary judgment on January 31, 1985. Following dismissal of appellants' petition, appellants sought leave to intervene in the instant case.

Relations between appellants and respondents are strained as a result of Peter's conviction of murdering his wife. Appellants believe Peter is violent and dishonest and that adoption of the child by respondents will foster antisocial behavior by the child, as well as result in drastic reduction of their visitation privileges. Respondents contend their son is innocent and will prevail on appeal, and furthermore believe appellants seek adoption of the child only to substitute for the loss of appellants' daughter and to assist in their adjustment to her death.

The report of the California State Department of Social Services (Social Services) indicates that respondents have provided excellent care for the child and have demonstrated they are capable of caring for a young child. The Social Services report also concluded that both sets of grandparents have played a key role in helping the child adjust to the circumstances of his mother's death. Peter E. has a prior felony conviction for receiving stolen property as does his brother, Chris E. In spite of concerns that respondents might have instilled antisocial values in their sons, together with the fact that respondents refuse to accept the fact their sons have violated the law, Social Services nevertheless concluded that the care of the child demonstrated by respondents counters these concerns and recommended that respondents' petition be granted.

---

[1]The word "appellants" where present is used only for the sake of indicating the fact that appellant Dorothy G. and her husband operate as grandparents, not to indicate that the husband has acquired any separate or independent legal status with respect to the child.

Appellants were granted visitation rights by the court at the end of 1981 and exercised these rights until the hearing on the adoption petition in the instant case.[2]

At the hearing on respondents' petition for adoption on June 6, 1985, respondents introduced numerous letters from members of the community attesting to the good character and economic ability of respondents to justify their adoption of the child. Respondents signed the consent to adoption in open court and informed the court that the child's father, Peter E., was available for examination if the court deemed necessary. Respondents further informed the court they had available for its consideration a petitioners' report of expenditures and stated they had been raising the child for the past two and one-half years. Respondents also informed the court that the child was available for questioning if the court deemed it appropriate.

Respondents rested their case and appellants then attempted to call several witnesses, making offers of proof with respect to each. The substance of appellants' offers of proof, together with the court's action thereon, are discussed in detail *infra,* part II. Charles A. Davis, a board-certified psychiatrist with the county mental health department, testified regarding the relationship between appellants and the child. Dr. Davis testified that the child's emotional and mental state was happy and well-adjusted, and he seemed intelligent and well-cared for. Dr. Davis stated the child appeared clean and well-groomed and had a nice playing environment. Dr. Davis testified that maintaining a close relationship between appellants and the child was very important to the child. Dr. Davis also indicated that the fact that other offspring of the prospective adopting parents had criminal records would be a significant and important factor in determining the propriety of the adoption and would necessitate further investigation. Dr. Davis indicated that his examination revealed no defects in the personalities of either Dorothy G. or her husband which would cause any concern about appellants' continued relationship with the child and that appellants and the child maintained a healthy and mutual love. The trial court accepted the testimony of Dr. Davis but reserved its ruling on the admission of Dr. Davis' report until the conclusion of the proceedings. The record does not indicate that the trial court later ruled on the admissibility of Dr. Davis' report and the issue has not been raised on appeal.

The court subsequently concluded that the allegations of respondents' adoption petition were true, and that adoption of the child by respondents was in the child's best interests and granted the petition.

The issues presented in this appeal are:

---

[2]Apparently visitation is ongoing and will be discussed later in this opinion.

I. Standing of Appellant.

II. Did the Trial Court Err in Refusing to Permit Appellants' Witnesses to Testify Concerning the Best Interests of the Child?

III. Did the Trial Court Err in Failing to Provide, in the Decree of Adoption, for Specific Visitation Rights for Appellants?

I.

Standing

This first issue presents a situation upon which the least law and the most pressing social factors coexist.

The apparent murder of the child's mother by his father causes intellectual difficulty because the legal schematic in which adoptions take place is seemingly oblivious to any considerations of fairness between parents and other blood relatives, including grandparents. "[B]ut when it comes to the matter of adoption, the future welfare of the minor is the only matter for consideration. . . . [¶] Upon first impression it would seem that grandparents should be given preferential rights in matters of adoption, but the legislature has omitted so to provide, and has made the welfare of the child the dominant factor, and not the wishes or desires of anyone who might, perchance, be a relative." (*In re Fahlman* (1927) 84 Cal.App.248, 251-252 [257 P. 893].)

There is actually little controversy and in fact little law which disputes or even discusses this conclusion. In the case before the court, however, the murder of the child's mother causes several legally compelled statuses to coexist in what can only be seen as a turmoil. In the first place, the deceased mother has nothing whatsoever to say about the future of her child, even assuming, as in this case, her wishes in this regard were knowable to the court. Moreover, the mother's death leaves the father with enormous influence concerning the child's future. Little question of the rights of the surviving parent, moral or legal, arises in the case of a natural death. The record in the case of *Adoption of Berman* (1975) 44 Cal.App.3d 687 [118 Cal.Rptr. 804] is illustrative of the court's duty vis-à-vis its perception of the fairness issue. In the *Berman* case, the parents had been separated for quite some time during which the mother had been dying of a protracted illness. The children lived either with their mother or, at her direction, with their maternal grandparents or an aunt and uncle, until her death. The day after the mother's natural death, the father consented to guardianship by the aunt and uncle. After waiting nearly one week, during which time funeral

services and the appropriate mourning must have taken place, the father remarried and, despite the earlier consent, resumed custodial care of the children. The eventual denial of all visitation by the mother's relatives and an unnoticed "secret" stepparent adoption in a neighboring county led to the appeal. Despite any negative connotations in the father's social behavior and notions of fairness to relatives, the court resolved the issue squarely in his favor, relying once again on the best interests of the child and a strict interpretation of the statutes concerning parties to an adoption and notice requirements. The court in *Berman* identified one issue in that case as "whether grandparents, as such, have standing to attack a stepparent adoption of their grandchildren." (*Id.*, at p. 691.) Considering *In re Fahlman, supra,* 84 Cal.App.248 and such sparse other authority as existed, the court concluded no statutory requirement for notice to grandparents existed. (*Id.*, at p. 693.) Likewise, after considering notions of "de facto" parental status and the past relationship of the children and their grandparents, the court resolved all other issues in favor of the natural father and dismissed the appeal from the denial of appellants' motion to set aside the stepparent adoption. (*Id.*, at pp. 694-695.)

In the case before this court, *Berman* could easily be viewed as controlling on the issue of standing, and as such the trial court's order granting the petition could easily be affirmed without dealing with the rather salient social and legal points earlier outlined. Likewise, the trial court could easily have ruled against intervention by the appellants. An analysis of the record leads to the inescapable conclusion that regardless of its ability, both by statute and case law, to exclude interested parties from an adoption, notions of fairness and social justice, viewed in the light of its duty to consider the best interests of the child, led to the trial court's use of its inherent power to hear evidence from witnesses not necessarily parties.

 Of equal frustration is the difficulty of interested parties such as appellants to get before the court in light of their inability to proceed with efforts to terminate the father's parental rights. Civil Code section 232 provides for such procedures, and the felony of murdering the natural mother would certainly fall within Civil Code section 232, subdivision (a)(4). However, this court's decision in *In re Sonia G.* (1984) 158 Cal.App.3d 18 [204 Cal.Rptr. 498] holds that convictions on appeal cannot be considered final judgments for purposes of the application of this section. California's provision for automatic stay and direct appeal to the Supreme Court plus the great length of time before any action becomes final in these types of cases *indirectly* operate to frustrate efforts to terminate the rights of a parent charged and convicted of a capital crime. Once again, notions of fairness, viewed from the standpoint of the best interests of the child, should allow the trial court to hear and consider evidence from nonstatutory sources.

What makes the instant case unique is the fact that appellants were granted leave to intervene in respondents' action for adoption by the trial court below. The ex parte petition alleged that intervener Dorothy G. is the maternal grandmother of the minor child and that the interveners have knowledge of facts proving that it is in the best interests of the minor child that the petition for adoption by respondents be denied. Furthermore, the petition alternatively requested that respondents' petition be stayed until resolution of appellants' pending petition for adoption.

Civil Code section 227, which details the hearing procedure and other procedures pertinent to a petition for decree of adoption, states in pertinent part in subdivision (a): "The person or persons desiring to adopt a child, and the child proposed to be adopted, shall appear before the court; . . . . The court shall examine all persons appearing before it pursuant to this Section. . . . If satisfied that the interest of that child will be promoted by the adoption, the court may thereupon make and enter a decree of adoption of the child by the adopting parent or parents, and the child and the adopting parents shall thereupon and thereafter sustain toward each other the legal relationship of parent and child . . . ." ■ A question before this court is whether appellants were parties or had otherwise acquired standing to appeal from the judgment rendered in the proceeding authorized in the foregoing section.

■ Although a formal motion for leave to intervene is authorized, it is not required and the application for leave to intervene may be made informally or ex parte and authorized by an ex parte order. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 247, p. 302; see *Allen* v. *California Water & Tel. Co.* (1947) 31 Cal.2d 104, 106-107 [187 P.2d 393].) ■ An order granting leave to intervene may be reviewed only on appeal from the final judgment. (*Estate of Edwards* (1978) 82 Cal.App.3d 885, 892 [147 P.2d 458].) ■ Following the trial court's ex parte order granting appellants leave to intervene, respondents applied ex parte to vacate the order granting leave to intervene. By minute order dated May 1, 1985, the trial court denied respondents' motion to vacate the ex parte order authorizing appellants' intervention. Respondents suggest that they did not appeal from the order of May 1, 1985, due to the perceived psychological danger to the child which would be posed by additional delay. Thus, respondents appear to impliedly take the position that the minute order of May 1, 1985, denying the motion to vacate the intervention constitutes a final judgment from which an appeal could have been taken. Appellants also argue that respondents did not "seek review of the order granting the intervention by way of appeal from the final judgment." ■ Ordinarily, orders pertaining to pleadings or parties are considered interlocutory and therefore not a final judgment. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 50, 82-85, pp. 74,

104-107.) ■ The court finds no authority nor have appellants or respondents cited any which stands for the proposition that the trial court's minute order denying respondents' motion to vacate the order granting intervention constituted anything *but* an interlocutory judgment and therefore appealable at that time. (See Code Civ. Proc., § 904.1.)

■ It is plainly settled in California that a party may appeal from a portion of a severable judgment. Thus, only the portion appealed from is placed before the reviewing court and the remainder of the judgment becomes final with an order of reversal, though general in terms, being construed to apply only to the portion appealed from. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 153, p. 160.) ■ Respondents cite no argument or authority to explain their failure to file a cross-appeal with respect to the issue of appellants' standing to intervene in the adoption proceedings below. However, Code of Civil Procedure section 906 provides, in pertinent part: "Upon an appeal . . . the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . . The respondent . . . may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken."

In *Central Manufacturing District, Inc.* v. *Board of Supervisors* (1960) 176 Cal.App.2d 850, at page 857 [1 Cal.Rptr. 733], the court stated: "This new matter [the amendment to the predecessor of Code of Civil Procedure section 906 which established the foregoing rule] seems to be a codification of the existing rule established by court decisions; they recognize that a respondent may assert a legal theory which, if found to be sound, should result in affirmance notwithstanding appellant's contentions." We have elected to address this issue of standing as well.

There is no case dispositive of the question of standing. The two ends of the spectrum appear to be represented by *Adoption of Berman, supra,* 44 Cal.App.3d 687, in which the court held that grandparents lacked standing to appeal from a decree of adoption by stepparents on the basis of lack of notice, and *Reeves* v. *Bailey* (1975) 53 Cal.App.3d 1019, 1023 [126 Cal.Rptr. 51], in which the court narrowly interpreted *Berman* and held that grandparents who had previously been accorded visitation rights were "proper parties" and had standing to attack an order of adoption on the basis of fraud. ■ Where a trial court grants leave to intervene, the intervener becomes a party to the action with the same procedural rights and remedies

as the original parties. (*People* v. *Perris Irrigation District* (1901) 132 Cal. 289, 290 [64 P. 399].) ■ The trial court below obviously viewed appellants as proper parties and granted the right to intervene as such. ■ The fundamental purpose of any adoption proceeding is to effectuate the welfare, protection and betterment of the child and the court is to be governed solely by the welfare of the child. (*Reeves* v. *Bailey, supra,* 53 Cal.App.3d at pp. 1022-1023; *Adoption of Berth* (1947) 79 Cal.App.2d 221 [179 P.2d 572].) Thus, the courts have liberally construed the rules of standing where a party has an interest in the proceeding. (*Adoption of Emery* (1961) 191 Cal.App.2d 428 [12 Cal.Rptr. 685]; *Reeves* v. *Bailey, supra,* 53 Cal.App.3d at pp. 1022-1023.) ■ Inasmuch as appellants initially alleged knowledge of facts which indicated that the child's adoption by respondents was not in his best interests, the court could have reasonably determined that appellants were both interested and proper parties whose presence in the action would effectuate the fundamental purposes of the adoption proceeding. The court did in fact express its view that its alternatives were not just one set of grandparents versus the other, and it intended to seek all information which was in the best interests of the child. Respondents make much of the fact that an adoption proceeding is not an adversary process and that the code contains no provisions for formal opposition to a petition for adoption with the only parties being the petitioners who filed the petition for adoption. Despite the nonadversarial nature of an adoption proceeding, courts have permitted nonparties to be heard on the issue of the best interests of the child to be adopted and to contest any reports submitted. (See, e.g., *In re Jay R.* (1983) 150 Cal.App.3d 251 [197 Cal.Rptr. 672].)

This court is mindful of the extraordinary relationship that exists between trial courts and the child. There can be little question of the ultimate harm to children which would result from a structure in which adoptions were plainly visible and which could be entered into by parties at will. An adoption proceeding should *not* be allowed to be turned into a sideshow by permitting the attendance of improper parties. There is little doubt that *Berman* correctly perceives the overwhelming social policy in favor of private and nonadversarial adoptions, the legislative approach first made cognizable in *In re Fahlman, supra,* 84 Cal.App. 248.

Thus, the primary issue in this case is whether the trial court correctly applied its discretion in allowing intervention by appellants under the facts of this case. In affirming that decision, this court is not criticizing *Berman*. There is nothing in the record before us or in the law which compels a result which confers standing on the appellants to directly challenge the adoption petition at the trial court level. Rather, this court recognizes certain criteria perceived by the trial court in permitting intervention.

In the first place, the adoption which is the subject of this review is not a stepparent adoption. While the father is still alive, his position, whether guilty or not, makes it impossible for him to raise his child at least until his appeal is final. The *Berman* situation, while ripe with the unfairness aspect, is an action brought by a natural parent apparently capable of raising his child.

Second, the child's natural mother, who arguably would be closely aligned with appellants, is deceased and this fact cannot be ignored. The courts should be loathe to confer intervener status on any party who merely disagrees with a child or sibling regarding the care and custody of a minor child. Notions of fairness may be relevant to the decision to confer "standing" in an area such as visitation rights or in dependency proceedings. However, the prospect of conferring intervenor status on a mere relative in an adoption proceeding, over and against the wishes of a living natural parent otherwise capable of continuing to raise the child, is well outside the statutory framework of adoptions.

A third important criteria operating in this case is the inability to bring a successful action under Civil Code section 232. As earlier discussed, the effects of the protracted litigation involving the death penalty appeal frustrated the ability of appellants to present themselves to the court as traditional parties. In cases where proper parties cannot directly petition for adoption, the trial court, having the best interests of the child in mind, may allow evidence to be presented by intervention.

Fourth, the interveners in this case—appellant Dorothy G.—had a direct blood relationship with both the deceased parent and the child. The relationship was further augmented by the existence of a prior custody or visitation relationship which had been sanctioned by the court.

Fifth and finally, the affidavits in support of intervention demonstrated that appellants were in a position to know and in fact did present evidence which could guide and assist the trial court in making a determination in the best interests of the child.

These factors being present, the trial court properly permitted intervention.

II.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote on page 210, *ante.*

The judgment is affirmed.

Franson, Acting P. J., and Martin, J., concurred.