2009 ME 93

**In re RICHARD E.**

and

**In re Anthony P.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 8, 2009.

Decided: Aug. 20, 2009.

Katharine S. Forte, Esq., Forte Law, P.A., Wells, ME, for biological mother.

Andrew Matulis, Student Attorney, Molly Watson, Student Attorney, E. James Burke, Supervising Attorney, Christopher Northrop, Supervising Attorney, Cumberland Legal Aid Clinic, Portland, ME, for Richard E. and Anthony P.

M. Thomasine Burke, Esq., Brown & Burke, Portland, ME, for adoptive parents.

Panel: ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] The biological mother of Richard E. appeals from a judgment of the York County Probate Court (*Nadeau, J.*) granting a petition to annul Richard's adoption filed by his adoptive parents. In a separate proceeding, the Probate Court granted the adoptive parents' petition to annul their adoption of Richard's half-brother, Anthony P. The biological mother of both children appeals only the order annulling Richard's adoption. Richard and Anthony each appeal the judgment that annulled their respective adoptions.

[¶ 2] The biological mother asserts that she was entitled to notice of the proceeding pursuant to 18–A M.R.S. § 9–315 (2008),[1] and that service by publication in

1. Title 18–A M.R.S. § 9–315 (2008), which governs the annulment of adoptions, provides:

the Kennebec Journal was improper pursuant to M.R. Prob. P. 4(e). She also contends that the method of service used was not reasonably calculated to give her notice of the lawsuit and therefore denied her due process. Richard and Anthony assert that the Probate Court erred in concluding that they lacked standing to intervene and present post-judgment motions for relief from the respective judgments. They also join in their biological mother's appeal as amicus curiae.

[¶ 3] Because the biological mother received insufficient notice of the proceeding, we vacate the judgment as to Richard. As the matter will have to be reconsidered on remand, we do not reach the other issues raised on appeal regarding Richard. We conclude that the Probate Court did not err or abuse its discretion in denying Anthony's post-judgment motions and affirm the judgment regarding Anthony.

## I. CASE HISTORY

[¶ 4] Richard E. was born on November 5, 1995. The next day, the Department of Health and Human Services (DHHS) requested and received a preliminary child protection order. After a hearing, the District Court (Portland, *Wheeler, J.*) found, by agreement,[2] that Richard was in circumstances of jeopardy and ordered that he be placed in the custody of his maternal grandmother.

[¶ 5] Richard remained with his grandmother until September 1997, when he was placed with a couple who petitioned the York County Probate Court to adopt him. The biological mother consented to the adoption. Because the parental rights of Richard's biological father were terminated by the Sagadahoc County Probate Court (*Voorhees, J.*) in November 1997, the father's consent to the adoption was not required. Richard's adoption was finalized on April 9, 1998.

[¶ 6] Anthony P. was born in 1997 to the same mother. He was adopted by the same couple after the biological mother's parental rights were terminated by consent pursuant to 22 M.R.S. § 4055(1)(B)(1) (2008) and the biological father's parental rights were terminated on the grounds of abandonment. 22 M.R.S. § 4055(1)(B)(2)(iii)(2008).

[¶ 7] Soon after being adopted, Richard began to exhibit significant problems with hyperactivity and aggression and was later diagnosed with severe mental illnesses. He resides in a therapeutic foster home, and his relationship with his adoptive family is "irretrievably broken." Anthony exhibited problems similar to Richard's, and has also been placed in a therapeutic foster home.

[¶ 8] In February 2008, members of the clinical staff at the therapeutic foster

(a) A judge of probate may, on petition of 2 or more persons and after notice and hearing, reverse and annul a decree of the Probate Court for one of the following reasons.
(1) The court finds that the adoption was obtained as a result of fraud, duress or illegal procedures.
(2) The court finds other good cause shown consistent with the best interest of the child.
(b) Notice of a petition to annul must be given to the biological parents, except those whose parental rights were terminated through a proceeding pursuant to Title 22, section 4055, subsection 1, paragraph B, subparagraph (2), and to all parties to the adoption including the adoptive parents, an adoptee who is 14 years of age or older and the agency involved in the adoption.
(c) After the Probate Court annuls a decree of adoption, the register of probate shall transmit immediately a certified copy of the annulment to the State Registrar of Vital Statistics.

2. Richard's biological father was not present and did not participate in the agreement.

home, the adoptive parents, and representatives from DHHS participated in two separate meetings: one to discuss Richard's needs and one to discuss Anthony's needs. All agreed that the adoptive parents could not meet the boys' extensive needs, and that both boys needed to remain in therapeutic foster settings.

[¶ 9] On April 3, 2008, the adoptive parents petitioned the York County Probate Court to annul the adoption of Richard. On April 9, 2008, they petitioned the Cumberland County Probate Court to annul the adoption of Anthony. The adoptive parents then moved for a change of venue of Anthony's case, and Anthony's case was transferred to the York County Probate Court.

[¶ 10] In their petitions, the adoptive parents alleged that the children's behaviors and needs were beyond their abilities to control or help, and that it was in each child's best interest to become a ward of the State. They also noted that DHHS supported the petitions, was willing to accept the children as wards of the State, and would facilitate the necessary legal process.

[¶ 11] The adoptive parents then attempted to notify the biological mother of the petition to annul Richard's adoption pursuant to 18–A M.R.S. § 9–315(b).[3] The

attorney for the adoptive parents requested that the York County Register of Probate search the confidential adoption file and the docket for the biological mother's current name and address, and then send her a copy of the petition to annul Richard's adoption.[4] The Register of Probate informed the attorney that there was no current address available for the biological mother. The attorney requested that the Register seek contact information for the biological mother from DHHS, believing that DHHS would be more likely to disclose this information, if DHHS had it, to a court official. He was informed that DHHS was unable to provide current contact information. The attorney also inquired of the Attorney General's Office about contact information, and was advised that there was none on file.

[¶ 12] Without any new information available, the attorney relied on the adoptive parents' belief as to the biological mother's last known name and her last known address in Richmond.[5] He then conducted a diligent White Pages and Internet search of name matches, but was unable to locate the biological mother.

[¶ 13] On May 13, 2008, the Probate Court granted the adoptive parents' motion for notice and service by publication,

---

3. The adoptive parents apparently erroneously concluded that the biological mother's parental rights to Anthony were terminated without parental consent pursuant to 22 M.R.S. § 4055(1)(B)(2) (2008), and therefore that she was not entitled to notice of the petition to annul Anthony's adoption pursuant to 18–A M.R.S. § 9–315(b). However, her rights were terminated by consent pursuant to 22 M.R.S. § 4055(1)(B)(1) (2008), and she was entitled to notice. Because the biological mother does not appeal from the order annulling Anthony's adoption, this issue is not addressed further.

4. In 2003, when the attorney had requested access to the adoption file to search for infor-

mation regarding the mother's medical history, the attorney was not permitted to view the file. He was provided with paperwork from which all of the biological mother's identifying information had been redacted. He therefore believed that, when seeking identifying information about the biological mother, it would be better to request that the Register review the file.

5. In 2003, the Probate Court sent a certified letter on the adoptive parents' behalf addressed to the biological mother at an address in Richmond. The letter was returned marked "refused."

*see* M.R. Prob. P. 4(e), finding that the adoptive parents, through their counsel, had made diligent but unsuccessful efforts to identify the whereabouts of the biological mother. Notice was published in the Kennebec Journal on June 9, 2008, and June 16, 2008.[6] A default judgment was entered against the biological mother on July 21, 2008.

[¶ 14] On August 20, 2008, the court held separate hearings on the petitions to annul the adoptions of Richard and Anthony. The court granted both petitions. That same day, DHHS requested and obtained orders of preliminary child protection for both Anthony and Richard. In the documents requesting those orders, DHHS identified the children's biological mother and disclosed her correct address in Waldoboro. It is unclear why DHHS, which had this information, had refused to disclose it earlier when disclosure would have facilitated timely notice to the biological mother.

[¶ 15] On September 2, 2008, the District Court (Springvale, *Foster, J.*) held a hearing on each preliminary order. The District Court found that the biological mother had no legal rights or obligations to either child and ordered that the prelim-

inary child protection orders would remain in effect. The District Court also granted the request of the guardian ad litem, who had been appointed by the District Court, that legal counsel be provided for the children pursuant to 22 M.R.S. § 4005(1)(F) (2008).[7]

[¶ 16] The biological mother filed a notice of appeal of the annulment of Richard's adoption. She did not attempt to obtain relief, pursuant to M.R. Prob. P. 60(b), from the default judgment entered against her. Richard and Anthony subsequently appealed the denial of their requests to reopen the judgments and participate in the annulment proceedings. We address in detail only the issues raised by the biological mother's appeal.[8]

## II. LEGAL ANALYSIS

[¶ 17] The biological mother argues that the affidavit of diligent search filed by the adoptive parents was inadequate to support service by publication. She also contends that service by publication in the Kennebec Journal was improper because the petition was filed in York County and therefore service by publication should have been in a newspaper of general circu-

---

**6.** The Kennebec Journal is published in Kennebec County. Richmond is part of Sagadahoc County.

**7.** Title 22 M.R.S. § 4005(1)(F) (2008) provides: "The guardian ad litem or the child may request the court to appoint legal counsel for the child. The District Court shall pay reasonable costs and expenses of the child's legal counsel."

**8.** During the course of these proceedings, Anthony was ten years old. By statute, 18–A M.R.S. § 9–315(b), an adoptee under the age of fourteen is not entitled to notice of annulment proceedings. Rules regarding required notice in statutory proceedings are also viewed as identifying those who have standing to participate in the proceeding. *See R.K. v. A.J.B.*, 284 N.J.Super. 687, 666 A.2d 215, 217

(Ch.Div.1995) (stating that those not entitled to notice have no right to participate and object); *In re Adoption of Reeves*, 309 Ark. 385, 831 S.W.2d 607, 609–10 (1992) (holding that a biological father was not entitled to statutory notice and did not have standing to challenge an adoption decree); *see also* Restatement (Second) of Judgments § 31 cmt. f (1982). Thus, the Probate Court did not err in determining that Richard and Anthony lacked standing to participate in the annulment proceedings. Accordingly, the judgment regarding Anthony, appealed only by Anthony, will be affirmed. On remand in Richard's case, the Probate Court may revisit the issue of Richard's participation, as Richard may turn fourteen during the remanded proceeding.

lation in York County pursuant to M.R.Prob. P. 4(e)(1).

[¶ 18] We review the trial court's decision to grant a motion for service by publication for an abuse of discretion. *Gaeth v. Deacon,* 2009 ME 9, ¶ 12, 964 A.2d 621, 624. Any factual findings regarding the court's decision to grant a motion for service by publication are reviewed for clear error, but whether the commencement of an action and the service of process comport with the requirements of due process and with procedural rules is a question of law that we review de novo. *Id.* ¶ 12, 964 A.2d at 624–25.

[¶ 19] In an adoption annulment proceeding, "[n]otice of a petition to annul must be given to the biological parents, except those whose parental rights were terminated through a proceeding pursuant to [22 M.R.S. § 4055(1)(B)(2)] and to all parties to the adoption including the adoptive parents, an adoptee who is 14 years of age or older and the agency involved in the adoption." 18–A M.R.S. § 9–315(b); *see also Adoption of Spado,* 2007 ME 6, ¶ 7 n. 2, 912 A.2d 578, 581. Pursuant to 18–A M.R.S. § 1–401 (2008): "Whenever notice of any proceeding or hearing is required under [the Probate Code], it shall be given to any interested person in such a manner as the Supreme Judicial Court shall by rule provide."

[¶ 20] Maine Rule of Probate Procedure 4(d)(1)(B) provides that service may be made by publication "as provided in subdivision (e) of this rule upon any such persons whose address or present whereabouts is unknown and cannot be ascertained by due diligence." Subdivision (e) requires that when service by publication is necessary in formal probate proceedings, "the register, on behalf of the applicant or petitioner, shall cause ... a brief statement of the object of the petition, to be published once a week for two succes-

sive weeks in a designated newspaper of general circulation in the county where the application or petition was filed."

[¶ 21] When actual notice is accomplished, a technical defect in service may be overlooked. *Phillips v. Johnson,* 2003 ME 127, ¶ 24, 834 A.2d 938, 945. Otherwise, to accomplish service, a method specified by the rule must be properly utilized. *See Adoption of Spado,* 2007 ME 6, ¶ 12, 912 A.2d at 582; *Brown v. Thaler,* 2005 ME 75, ¶ 9, 880 A.2d 1113, 1116.

[¶ 22] In this case, the petition to annul Richard's adoption was filed in York County. Therefore, service by publication in the Kennebec Journal did not comply with the requirements of Probate Rule 4(e). The biological mother did not receive actual notice of the annulment proceeding, and therefore, failure to comply with the requirements of Probate Rule 4(e) necessitates vacating the annulment order. *See Brown,* 2005 ME 75, ¶ 9, 880 A.2d at 1116.

[¶ 23] We must also note that DHHS had and has maintained an active interest in the annulment proceeding, and they are a party to the pending child protective proceeding. Throughout the proceeding, DHHS was apparently aware of the biological mother's current name and address. Timely disclosure of that information in the annulment proceeding would have avoided the necessity of service by publication and the remand that noncompliance with Probate Rule 4(e) now requires.

The entry is:

The annulment of the adoption of Richard E. is vacated. Remanded to the York County Probate Court for further proceedings in accordance with this opinion.

The judgment regarding Anthony P. is affirmed.