MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:     2018 ME 49
Docket:       Oxf-17-366
Argued:       February 15, 2018
Decided:      April 5, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

CLAUDIA SCHULZ

v.

HENDRIK DOEPPE

SAUFLEY, C.J.,

[¶1]  When Hendrik Doeppe's wife, Claudia Schulz, filed a complaint for protection from abuse against him in the District Court located in South Paris, Doeppe fled to Florida in order to evade service of process, leaving Schulz and the couple's two-year-old daughter in Maine.  Two months later, Schulz prepared a complaint for divorce from Doeppe, but neither she nor the Oxford County Sheriff's Office was able to serve him with the divorce complaint.

[¶2]  On Schulz's showing that she had diligently searched for Doeppe and that he was evading service, the court (*South Paris, Woodman, M.*) granted a motion for service of the divorce complaint by alternate means, allowing Schulz to effect service by publishing notice of the divorce complaint in the *Lewiston Sun Journal*.  Doeppe failed to appear at the divorce hearing, and the

court (*Ham-Thompson, M.*) entered a judgment of divorce, defaulting Doeppe. Doeppe moved for relief from that judgment pursuant to M.R. Civ. P. 60(b), asserting that the court should have ordered additional efforts to notify him that an order permitting service by publication had been granted. Doeppe appeals from the court's (*Dow, J.*) denial of that motion. We affirm the judgment.

## I. CASE HISTORY

[¶3] The following facts are drawn from the procedural record and the court's findings on Doeppe's motion to set aside the default. On February 9, 2016, Claudia Schulz filed a complaint for protection from abuse against her husband, Hendrik Doeppe. *See* 19-A M.R.S. § 4005 (2017). On the same day, Doeppe fled Maine and traveled to Florida in order to evade service. While he was in Florida evading service of process, Doeppe attempted, through family in Germany, to pressure Schulz into dismissing the complaint for protection from abuse.[1] Meanwhile, in her efforts to serve Doeppe, Schulz enlisted the support of the Oxford County Sheriff's Office, but she was unable to locate Doeppe in order to serve him with the summons and complaint.

---

[1] Doeppe arranged to have his family, who resided in the same town in Germany as Schulz's family, pressure her family to persuade Schulz to dismiss the complaint.

[¶4] On April 12, 2016, Schulz prepared a complaint for divorce that included a request for a determination of parental rights and child support. On the same day, the sheriff's office emailed Doeppe's Lewiston attorney to request Doeppe's address and ask whether the attorney would accept service of the divorce papers. Doeppe's attorney replied that he was not authorized to accept service on behalf of Doeppe, and he declined to provide Doeppe's address.

[¶5] On April 26, 2016, Schulz sent a letter along with the summons and a copy of the divorce complaint to Doeppe's attorney by certified mail. In the letter, Schulz stated,

> Neither the sheriff's department, the court nor I have heard back from your client and his location/address remains unknown, even with knowledge of the 2 orders to be served to him . . . .
>
> Therewith, your client, Hendrik Doeppe, needs to be served by alternate means in our divorce case (CF/FM-201 for references). One of those forms is to attempt service by mailing you a copy of the summons by certified/registered mail with return receipt.

Doeppe's attorney replied that he was "not yet authorized to accept service" on Doeppe's behalf.

[¶6] On April 27, 2016, Schulz filed the complaint for divorce in the District Court in South Paris. At the same time, she filed a motion seeking the court's authorization to make service by alternate means. Schulz asserted in her motion that she had taken all of the steps recounted above. In addition, she

4

stated that she had inquired of a prior landlord, who told her that Doeppe had moved to Germany; a former rental agency the couple had used, which indicated that Doeppe would not give his current address; and her parents, who had unsuccessfully sought Doeppe's new address from his parents. Schulz also indicated that she might have Doeppe's email address, which had inadvertently been included in an email from Doeppe's attorney to Schulz. She offered to use this email address as a method of delivering notice to Doeppe.

[¶7] The court (*Woodman, M.*) granted Schulz's motion for service by alternate means, allowing Doeppe to accomplish service by publishing notice of the divorce action once per week for three weeks in the *Lewiston Sun Journal*, a newspaper of general circulation reaching the community from which Doeppe had recently fled. The court did not require Schulz to send a copy of the order granting service by publication to Doeppe's email or to his attorney, or to take any actions other than publication.

[¶8] On June 13, 2016, Schulz was at the courthouse in order to attend one of the hearings scheduled for her protection from abuse claim. While at the courthouse, Schulz encountered Doeppe's attorney, who was present for a different case. Schulz explained to the attorney that she was attempting to

serve Doeppe in the divorce case, and she requested Doeppe's address. The attorney again declined to provide the address to Schulz.

[¶9] On June 17, 2016, Schulz filed an affidavit averring that she had completed service by publication. The court (*Ham-Thompson, M.*) held a final hearing and entered a judgment of divorce on September 13, 2016. *See* 4 M.R.S. § 183(1)(D)(3) (2017); M.R. Civ. P. 118. The judgment granted Schulz sole parental rights and responsibilities, with no rights of contact for Doeppe, and it ordered Doeppe to pay $62 per week in child support.

[¶10] On December 19, 2016, after multiple appearances in court to prosecute the complaint for protection from abuse, each of which had to be continued because Doeppe had not been served, Schulz dismissed the protection from abuse complaint. She stated that she could no longer afford to miss work to attend hearings that Doeppe would not attend and which could not go forward because Doeppe could not be served.

[¶11] On February 28, 2017, Doeppe filed a motion for relief from the divorce judgment. *See* M.R. Civ. P. 60(b). In an affidavit he filed with the motion, Doeppe acknowledged that he had declined to authorize his attorney to accept service of either complaint, and he conceded that his intent in traveling to Florida was to evade service. He asserted that because he was a German citizen

6

whose visa had expired, a "return to Maine to fight either case . . . was too great of a risk."

[¶12] The court (*Dow, J.*) held an evidentiary hearing on the motion for relief from the divorce judgment. Based on competent evidence, the court found that Doeppe's assertion that he did not know of the pending divorce action against him was "utterly incredible" and that Doeppe had intentionally evaded service of process.[2] *See Haskell v. Haskell*, 2017 ME 91, ¶ 12, 160 A.3d 1176. Further, the court found that Doeppe's motion for relief from the divorce judgment was a perpetuation of his effort to exert power and control over Schulz. The court denied the motion.

[¶13] Doeppe timely appealed from the court's denial of his Rule 60(b) motion. *See* M.R. App. P. 2(b)(3) (Tower 2016);[3] 14 M.R.S. § 1901 (2017).

---

[2] The court initially made an oral ruling from the bench, summarily denying Doeppe's motion. Doeppe moved for findings of fact and conclusions of law, but the court determined that Doeppe's motion was improper because he failed to include proposed findings. *See* M.R. Civ. P. 52(a). Nevertheless, the court prudently provided findings of fact and conclusions of law in order to give context and clarity to the litigation.

[3] The notice of appeal was filed before September 1, 2017, the effective date of the restyled Maine Rules of Appellate Procedure. *See* M.R. App. P. 1.

## II. DISCUSSION

[¶14] Doeppe argues that the court erred by denying his motion for relief from judgment because the judgment against him is void.[4] Doeppe contends that service by publication alone—without any additional measures to notify him that alternate service had been authorized—failed to comply with M.R. Civ. P. 4 and with the constitutional requirements governing service of process.[5]

[¶15] "Service of process serves the dual purposes of giving adequate notice of the pendency of an action, and providing the court with personal jurisdiction over the party properly served." *Gaeth v. Deacon*, 2009 ME 9, ¶ 20, 964 A.2d 621. Whether the commencement of an action and service of process comport with M.R. Civ. P. 4 and the Due Process Clause of the Fourteenth

---

[4] Throughout this litigation Doeppe has mistakenly asserted that he is entitled to relief from judgment pursuant to the catchall provision in M.R. Civ. P. 60(b)(6). In fact, because Doeppe contends that the court that entered the judgment against him lacked jurisdiction as a result of a failure of due process in the service of process, the pertinent provision is M.R. Civ. P. 60(b)(4). That provision authorizes relief from judgment on the ground that a judgment is void. M.R. Civ. P. 60(b)(4); *see also* Alexander, *Maine Appellate Practice* § 430-A at 303 (4th ed. 2013) (discussing the distinction).

[5] With the exception of his recitation of the standard of review used in examining a trial court's initial order granting service by publication, Doeppe does not argue in this appeal that the court abused its discretion in granting service by publication. Even if he had raised the argument, however, we would conclude that the court acted within its discretion in granting the motion given Schulz's showing that she had exercised due diligence in searching for Doeppe, M.R. Civ. P. 4(g)(1)(A), and that he had been evading process, M.R. Civ. P. 4(g)(1)(B). *See Phillips v. Johnson*, 2003 ME 127, ¶ 23, 834 A.2d 938.

Amendment is a question of law that we review de novo. *In re Richard E.*, 2009 ME 93, ¶ 18, 978 A.2d 217.

A.    Compliance with M.R. Civ. P. 4(g)

[¶16]  Doeppe does not challenge the key factual findings of the court.  He appears to rely on M.R. Civ. P. 4(g) when he argues that a lawsuit does not properly commence until the order for service by alternate means is, in some manner approved by the court, actually delivered to the defendant.   This reading finds no support in the Rule.  In fact, the relevant section of M.R. Civ. P. 4 states that when a court issues an order granting service by alternate means, "the order shall also direct the mailing to the defendant, *if the defendant's address is known*, of a copy of the order as published."   M.R. Civ. P. 4(g)(2) (emphasis added).  Here, because of his own efforts to evade service, Doeppe's address was unknown to Schulz.  Rule 4 did not impose a requirement that a copy of the order granting alternate service be personally delivered to him.

B.    Constitutional Challenge

[¶17]  Doeppe also contends that the court's failure to require that Schulz deliver the order to him by mailing a copy of that order to his attorney, to Doeppe's  email, or to his friends or family deprived him of his constitutional right to due process.  *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.

[¶18]  At the outset, we note that Doeppe's constitutional challenge is necessarily narrow.  Because he cannot and does not contend that he was deprived of actual notice of the lawsuit, Doeppe argues that the constitutional flaw was the failure to provide him with an email or letter to counsel giving notice of the *order* granting service by publication.

[¶19]  Ordinarily, we examine the adequacy of service by publication to determine whether the publication is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Guided by *Mullane*, we have held that publication as a method of service should be used only as a "last resort." *Gaeth*, 2009 ME 9, ¶ 26, 964 A.2d 621.

[¶20]  Neither *Mullane* nor *Gaeth* is exactly on point here, however, because the question is not whether publication was adequate to give Doeppe actual notice of the pending action; he was well aware that Schulz was filing a divorce complaint, and his lawyer had received a copy of the complaint.  Rather, because Doeppe had actual notice of the complaint that would be filed with the court, and was undoubtedly aware of Schulz's efforts to serve him, the question we must address is whether the court's failure to require that Doeppe be

notified by email or through counsel of the order granting service by publication, thereby triggering the time frame for his response, deprived him of his right to due process.

[¶21] We have not conducted this inquiry before, and we do so here by weighing the interests of both parties and the benefit to be gained from more substantial measures, and considering whether the procedures used comport with "traditional notions of fair play and substantial justice." *See Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *cf. Griffin v. Bierman*, 941 A.2d 475, 482 (Md. 2008) (balancing "the interests of the state or the giver of notice against the individual interest sought to be protected"). In conducting our analysis, we view the facts, and all reasonable inferences that can be drawn from the facts, in the light most favorable to the trial court's judgment. *Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903.

[¶22] As a preliminary matter, we note that when the court has information regarding other potential methods for service of an order or a complaint, the better practice is for the court to augment its order for service by alternate means with any reasonably available and inexpensive methods of contacting a defendant, including service on the defendant's attorney. *See* M.R. Civ. P. 4(g) Advisory Committee Note to 2010 Amendment ("Even if service by

publication is permitted, the court may still require that . . . notice of the publication be provided to the party to be served through other alternative means, including regular mail, certified mail or electronic mail . . . .").  Here, the court could have required Schulz to send an email to Doeppe's possible email address or notify Doeppe's attorney of the order for service by publication, or both.  The question is whether the court's decision not to require these extra steps resulted in a failure of due process.

[¶23]  We begin this inquiry by examining Schulz's interest in achieving finality.  That interest is substantial.  The record reveals that Schulz was forced to miss work on several occasions to attend hearings on the complaint for protection from abuse, a complaint that she was ultimately forced to dismiss as a result of Doeppe's successful efforts to evade service.  She undertook diligent efforts to locate Doeppe and displayed a genuine desire to serve him, yet those efforts were frustrated by Doeppe's evasive tactics.  Given that Doeppe evaded process in an effort to exert influence and control over Schulz, Schulz's interest in achieving finality is very high.

[¶24]  In examining Doeppe's interests, the record confirms that he engaged in an unabashed effort to evade service, abandoned his daughter,

12

provided no financial support for either his wife or his daughter, and avoided the potential consequences of his behavior in Maine.[6]

[¶25] We also consider the minimal benefit that would have been gained by requiring Schulz to attempt to send the order to Doeppe via email, to his lawyer, or to his acquaintances. The trial court could reasonably have inferred that any extra efforts at notifying Doeppe would have been fruitless given that Doeppe's attorney had been notified of the divorce action at least three times, had received a copy of the divorce complaint and summons, and knew that Schulz was seeking an order for service by alternate means. Moreover, Doeppe explicitly asserted in an affidavit accompanying his motion to set aside the default that it would have been "too great of a risk" to return to Maine "to fight either case"—an assertion that casts doubt on any claim that, had he received the order, he would have appeared.

---

[6] Doeppe's conduct clearly demonstrates that he was not seriously concerned with the outcome of the litigation. To the extent that Doeppe now claims an interest in that outcome, he asserts that the order entered upon his failure to appear, granting Schulz sole parental rights and responsibilities, was tantamount to an order terminating his parental rights. In contrast to a termination of parental rights order, the order at issue here is not permanent and can be amended upon his showing that there is a substantial change in circumstances and that he is ready to take responsibility for his own actions and become an appropriately involved parent. 19-A M.R.S. § 1653(10) (2017); 19-A M.R.S. § 1657 (2017). Because this option remains available to Doeppe, the judgment did not permanently deprive him of his right to have a relationship with his daughter.

[¶26]   Finally, we must determine whether the procedures used as a whole comport with traditional notions of fair play and substantial justice.  The motion court found, with support in the record, that Doeppe had successfully evaded process and was using the process rules in order to further exert influence and control over Schulz.  In the past, we have refused to countenance efforts by defendants to evade service of process.  *E.g., TD Banknorth, N.A. v. Hawkins*, 2010 ME 104, ¶¶ 15-17, 5 A.3d 1042.  Here, Doeppe not only evaded service, but did so as part of a pattern of controlling behavior toward Schulz.  Due process does not require us to be complicit in that conduct.

[¶27]   In sum, we decline to set aside the court's determination that service by publication was adequate.  This conclusion should not be surprising.  When a litigant affirmatively works to avoid service of process and is successful in that pursuit, his later objection to the form of alternate service chosen by the court will likely be unavailing.

The entry is:

Judgment affirmed.

E. Chris L'Hommedieu, Esq. (orally), Lewiston, for appellant mother

Joe Lewis, Esq. (orally), Port City Legal, Portland, for appellee Claudia Schulz

South Paris District Court docket number FM-2016-57
FOR CLERK REFERENCE ONLY